CLINT WALDEN AND CAMPBELL-BELL, INC., *v.*
HAROLD RAY HART AND CLYDE RATHER

5-4368                                          420 S. W. 2d 868

Opinion delivered December 4, 1967

*Pearson & Pearson,* for appellants.

*Putman, Davis & Bassett* and *Shaw, Jones & Shaw,* for appellees.

LYLE BROWN, Justice. This is a tort case arising out of an intersection collision between an ambulance and a passenger car. Appellees, plaintiffs below, occupied the ambulance; they recovered judgment against Clint Walden, appellant, who was driving the passenger car. Campbell-Bell, Inc., owner of the car driven by Walden, intervened to recover property damages from Harold Ray Hart, the ambulance driver. Campbell-Bell was denied recovery. The principal issue on appeal concerns the attack by appellants on the constitutionality of our statute which vests in the chief of police the power to authorize or designate certain ambulances as emergency vehicles.

Harold Ray Hart, owner and operator of the ambulance, was carrying a heart patient from Westville, Oklahoma, to Veterans Hospital in Fayetteville, Arkansas. The vehicle was equipped with the statutory siren and mounted flashing lights. Appellee Rather was riding in the ambulance and seated beside the patient. At the intersection of College Avenue and North Street in Fayetteville, Hart was faced with a red light. Hart was proceeding through the red light, using his siren and flasher signals. Walden entered the intersection at about the same time from North Street, intending to drive across College Avenue. The vehicles collided in the southeast quadrangle of the intersection, Hart's lane of travel. The chief of police of Fayetteville testified he was aware that Hart regularly brought patients to Fayetteville and the chief considered Hart's ambulance an emergency vehicle. He had not been requested to specifically designate it an emergency vehicle but the chief testified he recognized it as such.

Appellants timely challenged the validity of Ark. Stat. Ann. § 75-402(d) (Repl. 1957) which defines authorized emergency vehicles as follows:

"Vehicles of the fire department (Fire Patrol), police vehicles, *and such ambulances and emergency vehicles of municipal departments or public service corporations as are designated or authorized by the (commissioner) or the (chief of police of an incorporated city)."* (Italics supplied.)

The recited provision is a part of the Uniform Motor Vehicle Code. The italicized portion of the act would fall if appellants' contention of unconstitutionality is sustained.

We are aware that an act of the Legislature is presumed constitutional and should be so resolved unless it is clearly incompatible with the constitution; and that any doubt must be resolved in favor of constitutionality. *Hickenbottom* v. *McCain,* 207 Ark. 485, 181 S. W. 2d 226 (1944).

Under our constitutional doctrine of separation of powers the functions of the Legislature must be exercised by it alone. That power cannot be delegated to another authority. Ark. Const. Art. 4. *Oates* v. *Rogers,* 201 Ark. 335, 144 S. W. 2d 457 (1940). Had the Legislature, in delegating the power to the chief of police or state motor vehicle commissioner, afforded reasonable guidelines, we would have a different situation. That is because the Legislature may delegate "the power to determine certain facts, or the happening of a certain contingency, on which the operation of the statute is by its terms made to depend." *State* v. *Davis,* 178 Ark. 153, 10 S. W. 2d 513 (1928). But here the Legislature gave to the named authorities an unbridled discretion and that is fatal to the italicized provision of § 75-402 (d).

The motor vehicle code of the City of Dallas, Texas, contained a provision identical with our § 75-402(d), except that it does not use the word "commissioner." The Texas Supreme Court invalidated that section of the Dallas code insofar as it pertained to the power of

the chief of police. *Walsh* v. *Dallas Ry. & Terminal Co.*, 167 S. W. 2d 1018 (1943). That decision was based on the fact that no standard was set to guide the chief in administering his duties.

Typical of valid legislation in this field is an ordinance enacted by Utica, New York, and discussed in *Rizzo* v. *Douglas*, 201 N. Y. S. 194 (1923). That ordinance made it unlawful to operate a taxicab in Utica without first having secured a license approved by the commissioner of public safety. The court said if the ordinance had stopped at that point, the attack of unconstitutionality "would be of great force." However, the ordinance set up these guidelines for the commissioner:

> "The applicant must satisfy the said commissioner of public safety that he is over eighteen years of age; of good moral character; competent to drive a motor vehicle upon the streets of the city of Utica and has a thorough knowledge of the laws of the state of New York affecting or regulating the operation of motor vehicles, the traffic ordinances of the city of Utica and of this ordinance."

In *California State Automobile Ass'n. Inter-Insurance Bureau* v. *Downey*, 216 P. 2d 882 (1950), the state insurance commissioner suspended appellant's license to write automobile liability insurance in California. There the Supreme Court said:

> "There can be no doubt that it is the law that a valid statute cannot delegate unlimited powers to an administrative officer and that, to be valid, the statute must provide an adequate yardstick for the guidance of the executive or administrative body or officer empowered to execute the law."

There are two situations in which the "guidelines rule" is substantially liberalized: first, when it is difficult to lay down a definite or comprehensive rule; and secondly, when the administrative officer is dealing with

matters involving public morals, health, safety, and general welfare. But a statute or ordinance which "reposes absolute, unregulated or undefined discretion in an administrative body will not be upheld." *City of Florence* v. *George,* 127 S. E. 2d 210 (S. C. 1962). See 12 ALR p. 1435 and 92 ALR p. 400.

Since § 75-402(d) obviously provides no standards for the chief of police or commissioner, appellees point to Ark. Stat. Ann. § 75-725(b) and (c) (Supp. 1967). There it is required that emergency vehicles be equipped with a siren, whistle, or bell, and that certain other emergency vehicles mount on top of the car two alternately flashing red lights. Those are all the special requirements cited us which are imposed on emergency vehicles. To say that those two provisions establish sufficient standards for the licensing of an emergency vehicle is unreasonable. Certainly a competent administrative officer would take those two statutes into consideration in evaluating an application for a permit. But what other factors are to be considered by him? The legislation does not answer that question. That vacuum creates the constitutional defect.

The practical danger created by the absence of legislative standards is exemplified in this case. The chief of police at no time made a check of this ambulance. He was not aware of any affirmative responsibility reposed in him. He merely "considered" Hart's ambulance as an emergency vehicle because (1) his ambulance was equipped with red lights and a siren, and (2) he knew Hart brought patients to Fayetteville hospitals. What about other factors so essential to protect the public from the inherent dangers of an emergency vehicle? For example, consider those essential standards quoted from the *Rizzo* case. Our statutes give no authority to the chief to ascertain any facts about the age of the driver, his character, his competency as a driver, or his knowledge of traffic laws.

Appellees argue that some nineteen other states and numerous municipalities have the same provision

as our § 75-402(d) and that, excepting Texas, its constitutionality has never been attacked. However, a review of many statutes and cases in other jurisdictions reveals that their legislatures have, in numerous instances, supplemented their statutes with additional safeguards that remove the constitutional infirmity found in our situation.

Arkansas adopted the Uniform Motor Vehicle Act, with some modifications, in 1937. Since that time it has been substantially amended by our Legislature to keep abreast of changing conditions. In the pocket part of Uniform—Act, § 1, 11 U. L. A., is found this statement: "The uniform and model acts constituting this volume were declared obsolete or were withdrawn by the National Conference of Commissioners on Uniform State Laws in August 1943." That is understandable because the Uniform Motor Vehicle Code is of 1930 vintage. We point up these facts to show that the original act is not entitled to veneration. Our § 75-402(d) was in the code as first adopted.

In view of a possible retrial we shall briefly consider objections made by appellants to the giving, and refusal to give, certain instructions.

(1) Campbell-Bell asked for two instructions covering its theory that the driver Walden was a gratuitous bailee. Walden regularly drove the corporation's car from work to his home, where he kept it overnight. We have examined those instructions and find them to be confusing and not understandable. See our per curiam order of February 1, 1966, and reproduced inside the front cover of AMI. Had proper instructions been offered on that point we think they should have been given.

(2) The trial court gave AMI 2219, "Present Value—Definition." That term was not used in any instructions, hence the instruction was inappropriate.

656

(3) Campbell-Bell requested, and was refused, AMI 701, "Agent—Employee—Definition." Since the jury was called upon to decide the scope of Walden's activities as they related to his employer, it would have been proper to give that instruction. AMI 702 and AMI 703 were given.

The effect of our holding that portion of § 75-402(d) which we italicized to be unconstitutional is to place Harold Ray Hart's vehicle in the category of a private ambulance. See *Buck* v. *Ice Delivery Co.*, 29 P. 2d 523 (Ore. 1934).

Reversed and remanded.