ARKANSAS DEPARTMENT OF LABOR,
Dale CLINE, Director *v.* AMERICAN
EMPLOYMENT AGENCY, et al

74-200                                        517 S.W. 2d 949

Opinion delivered January 20, 1975

*Silas H. Brewer, Jr.,* for appellants.

*William A. Lafferty, Terry Matthews, James L. Sloan, Smith, Williams, Friday, Eldredge & Clark,* by: *Oscar E. Davis, Guy Amsler Jr.,* for appellees.

JOHN A. FOGLEMAN, Justice. In these consolidated actions appellees challenged the issuance of directives by Dale Cline, as Commissioner of Labor, which admittedly amounted to the adoption of rules and regulations governing operations of private employment agencies. The attack was centered upon a prohibition against the use of fictitious names by agents and employees of the agencies and the requirement that all agencies use a standard form of contract, or receipt, drawn so as to require the negotiation and execution of a new and separate contract on each referral of a job applicant to an out of state or out of city employer. Appellees also complained that the directives required the disclosure of the identity of the prospective employer to the applicant before he signed the contract, and that this would effectively bypass the agency in contracts between the applicant and the employer and deprive the agency of compensation for having brought the two together. The circuit court entered the following judgment:

> 2. That on or about June 13, 1972, Director Dale Cline of the Arkansas Department of Labor issued a "standard contract" form for use by all private employment agencies in the state effective July 1, 1972. Director Cline informed all private employment agencies that use of the new "standard contract" form would be a prerequisite to renewal of a license for such agencies to operate in the state. Such action by Director Cline constituted adoption of administrative rules or regulations affecting operations of private employment agencies in this state. Director Cline is without statutory authority

to adopt rules and regulations regarding use of "standard contract" forms by private employment agencies in this state. Therefore, the directive of Director Cline regarding use of "standard contract" form is hereby declared null and void.

3. That on June 21, 1972, the Arkansas Department of Labor issued letters to plaintiffs advising that their contract forms and their applications for license renewal were being disapproved for non-compliance with the "standard contract" form adopted by the Arkansas Department of Labor for general use (T. 135) by private employment agencies in the state effective July 1, 1972. Such action by the Arkansas Department of Labor constituted adoption of administrative rules or regulations governing operations of private employment agencies in this state. The Department of Labor is without statutory authority to issue administrative rules and regulations governing operations of private employment agencies in this state and the directives issued by the Arkansas Department of Labor on June 21, 1972 are therefore declared to be null and void.

4. On June 13, 1972, the Director of the Department of Labor issued a directive to all private employment agencies regarding registration and use of fictitious or "desk" names effective July 1, 1972. This directive further advised that the practice of using fictitious or "desk" names would not be permitted after July 1, 1972. The directive issued by the Director of Labor on June 13, 1972 constituted adoption of administrative rules or regulations regarding use of fictitious or "desk" names. The Director of Labor is without statutory authority to issue administrative rules or regulations regarding use of fictitious or "desk" names, and the directive of the Director of Labor issued on June 13, 1972 is hereby declared null and void. Notwithstanding the above, however, the practice by private employment agencies of using fictitious or "desk" names may violate Ark. Stat. Ann. § 81-1003 (Repl. 1960), and this order in no way affects the right of the Director of Labor for the State of Arkansas to in-

itiate duly authorized procedures to revoke the license of any private employment agency engaging in the practice of using fictitious "desk" names.

5. That the "Rules Governing Private Employment Agencies" adopted on September 22, 1969 by Defendant Arkansas Department of Labor and Defendant Dale Cline's predecessor in office were adopted by defendants outside their statutory authority and are, therefore, void in their entirety.

6. That the defendants be, and they are hereby, prohibited from enforcing any of the administrative rules or regulations set forth above.

Appellant lists two points for reversal, viz:

I

Appellants possess legislatively conferred rule-making authority regarding regulation of private employment agencies, and the lower court's contrary holding is erroneous as a matter of law.

II

Appellants properly exercised lawfully conferred rule-making authority regarding regulation of private employment agencies in the circumstances of this case.

As to point II, we agree with appellees that the action of the trial court was correct, insofar as the rules pertaining to the standard contract and the use of fictitious names are concerned, for a reason not relied upon by the circuit judge. It was stipulated that, in the promulgation of these directives, there had been no compliance with Ark. Stat. Ann. § 5-703 (Supp. 1973), a section of the Arkansas Administrative Procedure Act [Ark. Stat. Ann. § 5-701, et. seq. (Supp. 1973)]. Appellant contends that this act exempts it from its provisions. It is in error. The Employment Security Division of the Arkansas Department of Labor is specifically exempted, but neither the Department of Labor nor the Com-

missioner of Labor is. We can neither extend the exemption to them, nor can we find any legislative intent to extend the exemption beyond the agencies carefully and specifically enumerated.

Appellant finds express authority for the rules promulgated by him in Ark. Stat. Ann. §§ 81-101 - 123 (Repl. 1960). We are unable to find that authority. Giving the Commissioner of Labor power to administer and enforce all rules and regulations which it is the duty of the Department of Labor to administer and enforce, as § 81-102 does, certainly does not confer the power to adopt them. Granting to the Department of Labor and the Commissioner of Labor all the powers and duties previously conferred upon the Bureau of Labor & Statistics and the Commissioner of Labor & Statistics, as § 81-106 does, is not a grant of any powers or authority these agencies did not have.

Appellant places his principal reliance upon §§ 81-107, 81-109 and 81-110. In § 81-107 (a) the legislature gave appellant the power, jurisdiction and authority to enforce all labor laws in the state the enforcement of which was not otherwise specifically provided for, and all rules made pursuant to § 81-110. We find no grant of rule-making power in § 81-110, which relates solely to the notice and hearing required before any rule is adopted, amended or repealed. So § 81-107 (a) only empowers the Commissioner to enforce rules he is otherwise authorized to make, and any rules he might make under any implied rule-making power inherent in his duties to enforce labor laws.

Appellant also argues, however, that there is no limitation upon the Commissioner's rule-making power because the legislature, after having specifically authorized, by § 7 (d) of Act 161 of 1937, the Commissioner of Labor to propose to the Industrial Board rules for the prevention of industrial or occupational accidents or diseases, and for rendering public buildings safe, amended § 7 by Act 273 of 1951 to omit subsection (d). In this connection, we note that § 10 of Act 161 remains intact and appears as Ark. Stat. Ann. § 81-109. By that section the Commissioner is specifically empowered, in addition to other powers and duties conferred upon him by

law, to make reasonable rules for the prevention of accidents or of industrial or occupational diseases, or for making places of employment, places of public assembly and public buildings safe. We cannot find any other language in §§ 81-101 - 123 expressly granting rule-making power. Any express grant must be found in the laws the Commissioner is called upon to enforce.

We turn then to Ark. Stat. Ann. §§ 81-1001 - 1007 (Repl. 1960) relating to employment agencies. It requires that they be licensed by the Commissioner of Labor and authorizes the Commissioner to bring actions for violation of the provisions of the required bond, conditioned that licensees will not violate any of the duties, terms, conditions, provisions or requirements of Act 4 of the Extraordinary Session of 1923 (Ark. Stat. Ann. §§ 81-1001 - 1007). It also authorizes the Commissioner to revoke any license granted under the act, for violations of the act. We have rejected the argument that this act granted any discretion to the Commissioner in issuing a license. *Cline* v. *Plaza Personnel Agency, Inc.,* 252 Ark. 956, 481 S.W. 2d 749. In doing so, we used this significant language:

> It is also argued that the naked authority to issue a license carries with it, by implication, the power to exercise reasonable discretion in granting or refusing to grant such a permit. The fallacy in that argument lies in its assumption that the licensing officer may decide for himself what is a reasonable basis for rejecting an application. Discretionary power may be delegated by the legislature to the licensing authority, but it is essential that reasonable guidelines be provided in the statute. *Walden* v. *Hart,* 243 Ark. 650, 420 S.W. 2d 868 (1967). Inasmuch as the statute now in question affords no guidance whatever for the licensing authority, we must conclude that no discretion in the matter has been invested in the Director.

It only follows that the Commissioner could not have either express or implied authority to impose additional conditions upon the granting of licenses by rules and regulations he might adopt.

Appellant does not point out, nor do we find in §§ 81-1001 - 1007 any express grant of rule-making power. Sec. 3 of Act 4 of the Extraordinary Session of 1923 (see Ark. Stat. Ann. § 81-1003) makes rather stringent requirements of licensed employment agencies regarding records to be kept, the collection of fees, the giving and publication of information and advertisements and such matters. It does not interfere with the right of the parties to contract, and we have said that the portion of this section which limited the amount of the fee a licensed agency might charge was unconstitutional. *Alsup* v. *State*, 178 Ark. 170, 10 S.W. 2d 9. Although the constitutionality of the section is not in issue here, both the administrative agencies and the courts of this state should be extremely sensitive to, and give due regard to, constitutional limitations in this field. We should certainly not construe an act to confer a power which infringed upon constitutional rights to contract with reference to fees in such matters. It is our duty to construe an act so that it will meet constitutional tests. *Gibbs* v. *State,* 255 Ark. 997, 504 S.W. 2d 719. In any event, we nowhere find express authority for making the rules promulgated by appellant.

Of course, this does not necessarily mean that the Commissioner does not have implied power to adopt rules which are necessary to enable him to properly and effectively perform his duty to enforce these laws. See 1 Am. Jur. 2d 894, Administrative Law § 97; 73 CJS 416, Public Administrative Bodies & Procedure, § 95. Appellant states that the manifest purpose of these directives by him is to ensure full disclosure of pertinent information to all utilizing the services of private employment agencies. No other reason for these rules is suggested by him. This is necessary, he says, to his enforcement of the statute making it unlawful for employment agencies to publish any false or misleading information, representation, notice or advertisement.

There was testimony that fictitious or "desk names" for employees were resorted to by agencies to protect them from telephone harassment at their homes. Married women are also permitted to use their maiden names. There was also testimony that the Commissioner's contract requirements required the agencies to disclose the name of the employer to

the applicant in a contract submitted to the applicant for signature, and that a new contract must be signed before each reference. This enabled the applicant to decline to sign the contract and make a direct application to the employer, and, if he obtained employment, to avoid paying the agency, even though he utilized the information furnished by it.

Even if appellant does have the implied rule-making power he asserts, we cannot agree with appellant's argument that either of his directives was necessary to expedite his enforcement of the prohibitions stated in § 81-1003 in the following language:

> ***No licensed person conducting an employment agency shall publish or cause to be published any false or fraudulent or misleading information, representation, notice or advertisement; all advertisements of such employment agency by means of cards, circulars, or signs and in newspapers and other publications, and all letterheads, receipts, and blanks shall be printed and contain the licensed name and address of such employment agent and the word "agency," and no licensed person shall give any false information, or make any false promise or false representation concerning an engagement or employment to any applicant who shall register or apply for an engagement or employment or help.

As a matter of fact, we do not see how they would aid at all.

We note that appellant also argues that his directives were valid as interpretive rules which he says are permitted, though not binding on the courts, whenever an administrative agency finds that it is necessary or advisable that its interpretation of a legislative act be stated in order that the application of the act to be made by the agency may be known. We cannot see just what the Commissioner was attempting to interpret by these directives. If the Commissioner considered the prohibition against publication of false, fraudulent or misleading information or that against giving false information, or making a false representation concerning an engagement or employment to be applicable to

the use of fictitious names by employees of an agency, we unhesitatingly disagree.

Since we find no error in the trial court's action, the judgment is affirmed.