The Honorable Mike Everett State Senator 412 Broadway Marked Tree, Arkansas 72365
Dear Senator Everett:
This is in response to your request for an opinion on the privilege taxes collected on "simulcast" racing conducted by Southland Greyhound Park in West Memphis, Arkansas. Specifically, you note that A.C.A. § 23-111-508(d)(3), a provision of the "Arkansas Greyhound Racing Law," authorizes the Arkansas Racing Commission to regulate "simulcast" racing. You also note that A.C.A. § 23-111-509 (c) requires the franchise holder to pay the State of Arkansas, as a privilege tax, seven percent of "all monies wagered." You indicate, however, that Southland Greyhound Park is now conducting simulcast racing and paying only 2% of the money wagered to the State of Arkansas as privilege tax. Your questions, with regard to these facts are as follows:
 Does the Racing Commission have authority to establish the amount of privilege tax in light of A.C.A. § 23-111-509 (c)? In the event that they do not have that authority, can the state recover the past due privilege tax from Southland?
It is my opinion that the Racing Commission does not have the authority to establish the amount of privilege tax. If the relevant acts are construed to give the Commission this authority, they constitute, in my opinion, an unlawful delegation of legislative authority. A court will not construe the statutes in this manner if possible. The question of whether the state can recover any "past due privilege tax" is, in my opinion, a question of fact which this office cannot determine.
As you have noted, A.C.A. § 23-111-509 (c), (last amended in 1984), levies a privilege tax on the franchise holder (Southland Greyhound Park) of seven percent on "all monies wagered, together with one-third (1/3) of the odd cents or breaks."[1]
Thereafter, the Arkansas Legislature granted the Arkansas Racing Commission the authority to establish and regulate "simulcast" racing. This authority stemmed from Section 5 of Act 383 of 1987, which provided as follows:
 In addition to the pari-mutuel or certificate system of wagering as authorized by the "Arkansas Greyhound Racing Law," as amended, and notwithstanding any of the provisions contained therein, the Arkansas Racing Commission is authorized and directed to establish and adopt rules and regulations permitting the conduct of pari-mutuel or certificate system of wagering upon racing, either horse or greyhound, being conducted at any other racing facility and simultaneously televised to the premises of the franchise holder. [Emphasis added.]
This provision was amended in 1989 to allow simulcasting from
the franchise holder as well as to it. See Act 238 of 1989, Section 3. The 1989 act also, however, deleted the emphasized language above, which gave the Commission the authority to adopt rules and regulations "notwithstanding any of the provisions contained [in the Arkansas Greyhound Racing Law]."
In exercising its authority under these acts, the Arkansas Racing Commission has adopted the following regulations with respect to the distribution of monies wagered on "simulcast" races:
 (a) The Franchise Holder shall withhold from the amount wagered those amounts specified in Ark. Code Ann. 23-111-509. However, if the percentages withheld at the Host Racing Association [the entity holding the race] differ from the above percentages, the Franchise Holder may withhold the percentages of the Host Racing Association or the above percentages as the Franchise Holder elects.
 (b) The Franchise Holder shall pay to the state of Arkansas from the amount withheld pursuant to the provisions of sub-paragraph (a) above, the following: two percent (2%) on all amounts wagered up to $350,000.00; three percent (3%) of all amounts wagered between $350,000.00 and $500,000.00; and six percent (6%) of all amounts over $500,000.00.
After the passage of the 1987 act first authorizing simulcasting, it could have been argued that the legislature granted authority to the Racing Commission to set the amount of the privilege tax. This act gave the Commission the full authority to establish and regulate simulcast racing "notwithstanding the provisions of the `Arkansas Greyhound Racing Law'" It has been held that the term "notwithstanding" means "without prevention or obstruction from or by," or "in spite of." See King v. Sununu, 126 N.H. 302,490 A.2d 796 (1985); Missouri Pac. R. Co. v. Rental Storage Transit Co., 524 S.W.2d 898 (Mo.App. 1975); Dinkler v.Jenkins, 118 Ga. App. 239, 163 S.E.2d 443 (1968); TheodoreRoosevelt Agency, Inc. v. General Motors Acceptance Corp.,156 Colo. 237, 398 P.2d 965 (1965); and State ex rel. Carmean v.Board of Ed. of Hardin County, 170 Ohio St. 415, 165 N.E.2d 918
(1960). It could thus have been concluded, after passage of this act, that the legislature had granted authority to the Commission to make whatever regulations it pleased with regard to simulcast racing, in spite of any provision of the existing statutes governing greyhound racing. It is my opinion, however, that this would have constituted an unlawful delegation of legislative authority. See Arkansas Constitution, art. 4, § 2. It has been stated that "while the General Assembly may not delegate its legislative authority, it may by providing guidelines, `delegate the power to determine certain facts, or the happening of a certain contingency, on which the operation of the statute is by its terms made to depend.'" Venhaus v. State, 285 Ark. 23,684 S.W.2d 252 (1985), citing Walden v. Hart, 243 Ark. 650,420 S.W.2d 868 (1967). Statutes, however, which vest "unbridled discretion" with judicial or executive officers are unconstitutional. Id. Additionally, it has been stated as a general matter that "[t]he legislature may not authorize administrative officers to make regulations in conflict with or varying the provisions of a statute . . ." 16 C.J.S.Constitutional Law § 144 at 470. It has been held as a specific matter that the "legislature cannot delegate its power to tax or fix the tax rate." City of Harrison v. Snyder, 217 Ark. 528,231 S.W.2d 95 (1950). Under these principles, Act 383 of 1987, Section 5, if construed to give the Arkansas Racing Commission the authority to set the rate of privilege tax, would be unconstitutional.
In any event, the language authorizing the Commission to adopt regulations "notwithstanding the `Arkansas Greyhound Racing Law'" was deleted by Act 238 of 1989. The relevant subsection now provides as follows:
 In addition to the pari-mutuel or certificate system of wagering as authorized by the Arkansas Greyhound Racing Law, § 23-222-101 et seq., the Arkansas Racing Commission is authorized and directed to establish and adopt rules and regulations permitting the conduct of pari-mutuel or certificate system of wagering upon racing, either horse or greyhound, simultaneously televised to or from the premises of the franchise holder.
It is my opinion, under this existing statute, that the Arkansas Racing Commission does not have the authority to adopt regulations governing simulcast racing which would be contrary to statutes found in the "Arkansas Greyhound Racing Law," if the general language of these statutes can be construed to cover "simulcast racing." In my opinion, the general language of A.C.A. § 23-111-509, which governs the distribution of monies wagered, can be construed to govern the distribution of monies wagered on simulcast races. It is therefore my opinion that the Arkansas Racing Commission does not have the authority to set a different privilege tax percentage than that imposed by A.C.A. §23-111-509.
This conclusion is consistent with the rule that if it is possible to construe an act so that it will meet the test of constitutionality, a court not only may, but should and will do so. Love v. Hill, 297 Ark. 96, 759 S.W.2d 550 (1988). The construction of the relevant acts in this manner avoids an unconstitutional delegation of legislative authority, and in my opinion is the construction a court would employ.
In response to your second question, it is my opinion that the issue of whether the state can recover "past due" privilege taxes will be a question which will involve the determination of facts. This office is not empowered as a factfinder. The amount of the taxes actually collected and remitted, and the times at which they were collected will be relevant to the determination.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The other two-thirds of the odd cents or breaks are to be paid to the city or town where the franchise holder is located, if the franchise holder is located within a city or town, and to the county if the franchise holder is not located within the limits of a city or town. The franchise holder is authorized to withhold and retain twelve percent of all monies wagered for its own use and benefit. The balance of the monies wagered to is to be paid over to patrons.