The Honorable Dan Greenberg State Representative 55 Fontenay Circle Little Rock, AR 72223-9569
Dear Representative Greenberg:
I am writing in response to your request for an opinion concerning the powers of the Arkansas Milk Stabilization Board under Act 754 of 2007, the "Arkansas Milk Stabilization Board Act," which is codified at A.C.A. §§ 2-10-101 — 104 (Supp. 2007). Your specific question is as follows:
 Under Act 754, does the Milk Stabilization Board have the power to regulate milk prices unilaterally — or, conversely, is action by the state legislature required in addition to the decision of the Board in order to regulate milk prices?
RESPONSE
In my opinion, although the act is not entirely clear on this matter, the Milk Stabilization Board ("Board") likely lacks authority to regulate milk prices without further action of the General Assembly.
The Board is authorized to create and implement a "plan" for the dairy industry pursuant to the Arkansas Milk Stabilization Board Act, A.C.A. §§ 2-10-101 — 104 (Supp. 2007). The Board's powers and duties are set forth as follows under A.C.A. § 2-10-104:
(a) The Arkansas Milk Stabilization Board shall:
 (1) Administer this subchapter; *Page 2 
 (2) Research other states to determine how those states support their dairy farmers;
 (3) Investigate methods of milk production, dairy pricing, and support of the dairy industry;
 (4) Create a plan to assist Arkansas dairy farmers that would be equitable to all parties in the state dairy industry and withstand legal challenges;
 (5) By December 31, 2007, the board will provide a copy of the proposed plan determined in subdivision (a)(4) of this section to the Secretary of the Arkansas Agriculture Department and any other person or entity requesting a copy of the proposed plan;
 (6) Provide a forty-five-day period for public comment on the proposed plan provided in subdivision (a)(5) of this section;
 (7)(A) Create the final plan for submission to the Legislative Council following the public comment period; and
 (8) Promulgate rules the board considers necessary or desirable to implement the final plan determined in subdivision (a)(7) of this section.
 (b) The board shall submit its final plan as determined under subdivision (a)(7) and rules as determined under subdivision (a)(8) to the Legislative Council for review no later than March 1, 2008.
 (c)(1) Once reviewed by the Legislative Council, the Arkansas Agriculture Department shall implement the plan.
 (2) The Arkansas Milk Stabilization Board shall monitor progress and success of the plan. *Page 3 
 (d) The Arkansas Milk Stabilization Board shall have jurisdiction over milk and milk products marketed in the State of Arkansas.
A.C.A. § 2-10-104 (Supp. 2007).
The Board is thus charged with the power and duty to, inter alia, "investigate methods of . . . dairy pricing," "create a plan to assist Arkansas dairy farmers," and "promulgate rules . . . to implement the final plan." With regard, specifically, to milk prices, A.C.A. §2-10-102 includes the following among various "findings":
 (6) Assurance of a fair and equitable price for dairy farmers ensures their ability to provide milk to the market and the vitality of the state's dairy industry and all the associated benefits of the industry;
 (7) Recent, dramatic price fluctuations, with a pronounced downward trend, threaten the viability and stability of the dairy industry of this state; and
 (8) The federal order system, implemented by the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601 et seq., established only minimum prices paid to producers for raw milk, without preempting the power of the state to regulate milk prices above the minimum levels so established.[1]
A.C.A. § 2-10-102(a) (Supp. 2007). *Page 4 
These provisions plainly reflect a concern respecting pricing. But in my opinion the authority to include milk price regulations in the "plan" is less clear, given the Board's specific grant of authority to "investigate" dairy pricing methods. The term "plan" in itself is also somewhat vague, and arguably suggests that some further action is required to effectuate the "findings" identified by subsection 2-10-102.
It might nevertheless be contended that by giving the Board the authority to promulgate rules to implement the "final plan," the legislature has vested the Board with regulatory authority over milk prices. This argument might be buttressed by A.C.A. § 2-10-102(b)(1), which declares as one of the purposes of the subchapter: "to . . . [t]ake all necessary steps to assure the continued viability of dairy farming in the state."
I foresee a problem with this interpretation, however, due to the absence of any clear standards or guidelines by which the Board might regulate prices. It is generally stated that "[w]hile the General Assembly may not delegate its legislative authority, it may by providing guidelines, delegate `the power to determine certain facts, or the happening of a certain contingency, on which the operation of the statute is by its terms made to depend.'" Venhaus v. State, 285 Ark. 23,27, 684 S.W.2d 252 (1985), quoting Walden v. Hart, 243 Ark. 650,420 S.W.2d 868 (1967). In the absence of any such legislatively established guidelines, the vesting of regulatory authority in an administrative board is vulnerable to attack as circumventing the constitutional "separation of powers" doctrine, embodied in Ark. Const. art. 4, §§ 1 2 . Id.
It is well established that statutes will be construed as constitutional, if possible. Bunch v. State, 344 Ark. 730, 736, 43 S.W.3d 132 (2001); Jones v. State, 333 Ark. 208, 969 S.W.2d 618 (1998). A court will therefore endeavor to avoid a construction of the Arkansas Milk Stabilization Board Act, A.C.A. §§ 2-10-101 — 104 (Supp. 2007), that calls the constitutionality of these statutes into doubt. See,e.g., Arnold v. Kemp, 306 Ark. 294, 813 S.W.2d 770 (1991); Love v.Hill, 297 Ark. 96, 759 S.W.2d 550 (1988). This principle of statutory construction, coupled with the absence of any clear expression of legislative intent to vest the Milk Stabilization Board with the power to regulate milk prices, compels me to conclude that the Board likely lacks such power, absent further action of the General Assembly. To conclude otherwise in my opinion invites constitutional "separation of powers" problems because A.C.A. §§ 2-10-101 — 104 appear to be devoid of sufficient guidelines for the Board to follow in regulating milk prices. *Page 5 
In my opinion, therefore, if faced with the question, a court would not interpret the Arkansas Milk Stabilization Board Act, A.C.A. §§2-10-101 — 104 (Supp. 2007), as giving the Milk Stabilization Board the power to regulate milk prices. Further action by the legislature will instead by necessary in order to regulate milk prices.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Regarding the referenced Agricultural Marketing Act of 1937,see Ark. Op. Att'y Gen. 2007-036, which noted that while most courts have held that state regulation of milk prices is not preempted by the federal milk marketing regime, H.B. 1419 of the 86th
General Assembly was nevertheless "conflict preempted" by the federal regime because "compliance with the extant federal order is impossible and the objectives of the federal scheme would be undermined." Op. 2007-036 at 10. House Bill 1419 was not enacted into law.
Any effort by the State to regulate milk prices will therefore be subject to scrutiny under the federal Supremacy Clause to determine whether it conflicts with the existing federal scheme. The State must also be cognizant of potential anti-trust issues when regulating milk prices. See generally Rice v. Norman Williams Co. 458 U.S. 654 (1982) (discussing the state action doctrine defense to a Sherman Act anti-trust claim); 324 Liquor Corp. v. Duffy, 479 U.S. 335 (1987) (same); California Retail Liquor Dealers Ass'n. v. Midcal Aluminum,Inc., 445 U.S. 97 (1980). Additionally, any State milk price regulations must not unconstitutionally discriminate against interstate commerce.See, e.g., West Lynn Creamery, Inc. v. Healy, 512 U.S. 186 (1994).
 *Page 1