2009 Ark. 334

**Barrett CATO, Petitioner,**

v.

**CRAIGHEAD COUNTY CIRCUIT COURT, Respondent.**

No. 09–4.

Supreme Court of Arkansas.

June 4, 2009.

Quattlebaum, Grooms, Tull & Burrow, PLLC, by: Joseph R. Falasco, Little Rock, for petitioner.

No response.

**ANNABELLE CLINTON IMBER,** Justice.

Petitioner Barrett Cato petitions this court for a writ of prohibition or, in the alternative, a writ of certiorari, to prevent the Craighead County Circuit Court from exercising jurisdiction over him in an underlying tort case. The plaintiff in the underlying case, Kevin Lawrence, has filed a responsive brief. At issue is the constitutionality of Arkansas Code Annotated section 12–62–403 (Repl.2003), which reads as follows: "No person belonging to the organized militia shall be served with any civil process while going to, remaining at, or returning from any place at which he may be required to attend for military duty." Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(3) (2009). We grant the writ of certiorari.

The facts are not in dispute. Lawrence filed his complaint in the Craighead County Circuit Court on July 12, 2007, naming Barrett Cato and Debra Haggard as defendants. He alleged that both he and Cato were visitors in Haggard's residence on July 15, 2005, when Cato fired a gun, striking Lawrence in the abdomen. Lawrence alleged that Cato negligently discharged the weapon, failed to handle or maintain it in a safe manner, and failed to use ordinary care; he further alleged that Haggard failed to monitor the activities at the residence. He sought compensatory damages as well as exemplary and punitive damages in the amount of $250,000, alleging that Cato had acted willfully, wantonly, and in reckless disregard of his rights. Lawrence amended his complaint on November 6, 2007, adding Debra Hale, the renter of the residence owned by Haggard, as a defendant.[1] On November 7, 2007, Lawrence filed a motion to extend time for service as well as an affidavit detailing his unsuccessful efforts to locate both Cato and Haggard. The circuit court entered an order on November 8, 2007, extending the time to serve all defendants for an additional 120 days, up to March 6, 2008.

On November 19, 2007, Cato was served with a summons and the amended complaint while on uniformed duty with the Arkansas National Guard at the Prescott Armory. He filed a motion to dismiss the amended complaint on December 6, 2007, asserting that the service of process was insufficient as it violated section 12–62–403. Cato sought dismissal in accordance with Arkansas Rule of Civil Procedure 12(b)(2), (4), and (5), and alleged that Lawrence's failure to properly serve him rendered the circuit court without jurisdiction. Lawrence filed a response to Cato's motion to dismiss on January 22, 2008, admitting that service of process was insufficient at that time but requesting the court hold the motion in abeyance until the expiration of the time for service on March 6, 2008.

Also on January 22, 2008, Lawrence filed an affidavit for warning order, stating that diligent inquiry had been made and that Cato's whereabouts were unknown. Specifically, the affidavit alleged that Cato had been deployed to active military duty in Iraq since the date on which he was served at the Prescott Armory but that the Arkansas National Guard refused to di-

---

1. The record reflects that Hale and Haggard may be the same person.

vulge information on his exact whereabouts. The clerk of the circuit court issued a warning order on the same day, directing Cato to appear within thirty days of the date of first publication and warning that he may face entry of judgment by default for failure to appear.

On January 29, 2008, Lawrence amended his response to Cato's motion to dismiss, arguing that the November 19, 2007 service of process at the Prescott Armory was sufficient under Arkansas Rule of Civil Procedure 4. Lawrence asserted that section 12–62–403 had been implicitly superseded by the passage of Amendment 80 to the Arkansas Constitution. Cato replied to the amended response on February 5, 2008, contending that there was no conflict between Rule 4 and section 12–62–403. Cato cited to Arkansas Rule of Civil Procedure 81(a), which makes the rules inapplicable where a statute creating a right, remedy, or proceeding specifically provides a different procedure. He argued that section 12–62–403 provided a right for persons in the organized militia to be free from service of process while going to, remaining at, or returning from military duty.

Cato filed a renewed motion to dismiss on February 22, 2008. He maintained that service of process by means of the warning order was also insufficient, in that Lawrence had failed to comply with the requirements of Rule 4(f). In his reply to Lawrence's response to the renewed motion, Cato specifically alleged that Lawrence's affidavit for warning order failed to set forth facts demonstrating his efforts to locate Cato. Cato further alleged that the fact that he had previously been personally served belied Lawrence's claim that Cato's whereabouts were unknown.

The circuit court held a hearing on Cato's motions to dismiss on April 28, 2008. After hearing arguments by counsel, the court orally denied Cato's motion to dismiss, ruling that section 12–62–403 violated the separation-of-powers doctrine and that the November 19, 2007 service at the Prescott Armory was sufficient. The court further ruled that the service of process by warning order was insufficient. The court entered its written order on June 12, 2008, finding that it had *in personam* jurisdiction over Cato and that he had been duly served with process in accordance with Rule 4. Because section 12–62–403 "has no available alternative procedure for service of process on such members of the organized militia," the court ruled that it violated the separation-of-powers doctrine and Amendment 80 and was thus unconstitutional. The court granted Cato's oral motion to stay further proceedings for a period of thirty days following his period of active duty, in accordance with Arkansas Code Annotated section 12–62–406 (Repl.2003).

Cato filed his petition for writ of prohibition or certiorari in this court on January 2, 2009. He does not dispute the circuit court's finding that the service of process by warning order was insufficient. He does assert error in the court's ruling on the constitutionality of section 12–62–403. Cato urges this court to issue either writ in order to prevent the circuit court from exercising jurisdiction over him, as section 12–62–403 creates a substantive right to be free from service of process and therefore does not impede upon this court's rulemaking authority.

It is well settled that a writ of prohibition is an extraordinary writ that is only appropriate when the lower court is wholly without jurisdiction. *Erin, Inc. v. White County Circuit Court*, 369 Ark. 265, 268, 253 S.W.3d 444, 446 (2007). In addition, the writ is appropriate only when no other remedy, such as an appeal, is available. *Id.* at 268, 253 S.W.3d at 447. Prohibition is a proper remedy when the juris-

diction of the lower court depends upon a legal rather than a factual question. *Id.* We confine our review to the pleadings in the case. *Id.* Moreover, prohibition is never issued to prohibit a trial court from erroneously exercising its jurisdiction. *Id.* Writs of prohibition are prerogative writs, extremely narrow in scope and operation; they are to be used with great caution and forbearance. *Id.* They should issue only in cases of extreme necessity. *Id.*

This court has repeatedly stated that we will not issue a writ of prohibition for something that has already been done. *Allen v. Circuit Court of Pulaski County, Ninth Div.,* 2009 Ark. 167, at 9, 303 S.W.3d 70 (citing *Holmes v. Lessenberry,* 297 Ark. 23, 759 S.W.2d 37 (1988) (per curiam)). It is clear to this court that the circuit court has already acted on this matter by denying Cato's motions to dismiss. Accordingly, relief in the form of a writ of prohibition does not lie. *See id.* Nonetheless, this court has, on occasion, treated a writ of prohibition as a writ of certiorari. *Conner v. Simes,* 355 Ark. 422, 428, 139 S.W.3d 476, 479 (2003). We have explained that the writ of prohibition cannot be invoked to correct an order already entered, but where the lower court's order has been entered without or in excess of jurisdiction, we will carve through the technicalities and treat the application for a writ of prohibition as one for certiorari. *Id.* Consistent with this practice, Cato has alternatively requested a writ of certiorari.

The standards for determining the propriety of a writ of certiorari are well settled in Arkansas. *Id.* A writ of certiorari is extraordinary relief, and we will grant it only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Id.* In determining its application, we will not look beyond the face of the record to ascertain the actual merits of a controversy, or to control discretion, or to review a finding of fact, or to reverse a trial court's discretionary authority. *Id.* at 428, 139 S.W.3d at 480. A writ of certiorari lies only where it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, and there is no other adequate remedy. *Id.* We have said that a writ of certiorari is a remedy used to quash irregular proceedings. *Lenser v. McGowan,* 358 Ark. 423, 427, 191 S.W.3d 506, 508 (2004).

We hold that Cato is entitled to relief in the form of a writ of certiorari. As a threshold matter, we reject the circuit court's conclusion that section 12–62–403 is unconstitutional. Section 12–62–403 provides a substantive right to members of the organized militia to be exempt from civil process while going to, remaining at, or returning from any place where they may be required to attend for military duty; therefore, it is not a procedural statute and does not violate the separation-of-powers doctrine.

The separation-of-powers provisions of the Arkansas Constitution are found in article 4 and provide as follows:

The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to-wit: Those which are legislative, to one, those which are executive, to another, and those which are judicial, to another.

No person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

Ark. Const. art. 4, §§ 1, 2. Additionally, section 3 of amendment 80 of the Arkansas Constitution provides that "[t]he Supreme Court shall prescribe the rules of pleading,

practice and procedure for all courts; provided these rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as declared in this Constitution." Ark. Const. amend. 80, § 3.

 It is well settled that there is a presumption of validity attending every consideration |₈of a statute's constitutionality. *Johnson v. Rockwell Automation, Inc.,* 2009 Ark. 241, at 4, 308 S.W.3d 135 (citing *Shipp v. Franklin,* 370 Ark. 262, 258 S.W.3d 744 (2007)). Every act carries a strong presumption of constitutionality, and before an act will be held unconstitutional, the incompatibility between it and the constitution must be clear. *Id.* Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality. *Id.* The heavy burden of demonstrating the unconstitutionality is upon the one attacking it. *Id.* When possible, we will construe a statute so that it is constitutional. *Id.* In determining the constitutionality of statutes, we look to the rules of statutory construction. *Id.* When construing a statute, the basic rule is to give effect to the intent of the legislature. *Id.* (citing *Rose v. Ark. State Plant Bd.,* 363 Ark. 281, 213 S.W.3d 607 (2005)). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*

 In analyzing the constitutionality of statutes in accordance with the separation-of-powers doctrine, this court has recently set forth a bright-line rule: "[S]o long as a legislative provision dictates procedure, that provision need not directly conflict with our procedural rules to be unconstitutional. This is because rules regarding pleading, practice, and procedure

are solely the responsibility of this court." *Johnson,* 2009 Ark. 241, at 7, 308 S.W.3d 135 (citing Ark. Const. amend. 80, § 3). Under our holding in *Johnson,* the only question that need be |₉asked is whether the challenged legislation dictates procedure. If the legislation bypasses our rules of pleading, practice, and procedure by setting up a procedure of its own, then it violates the separation-of-powers doctrine. *Id.*

In distinguishing between substantive and procedural law, this court has stated as follows:

> The boilerplate definition of substantive law is "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties," while procedural law is defined as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves."

*Summerville v. Thrower,* 369 Ark. 231, 237, 253 S.W.3d 415, 419–20 (2007) (quoting *Black's Law Dictionary* 1443, 1221 (7th ed.1999)). Section 12–62–403 is substantive legislation because it creates a right for members of the organized militia; specifically, it grants them an exemption from civil process while going to, remaining at, or returning from any place where they may be required to attend for military duty. In other words, section 12–62–403 bars the application of the usual service-of-process procedures, found in Rule 4, to members of the organized militia at such times. It does not, however, bypass our rules of pleading, practice, and procedure by setting up an alternate procedure for having a right or duty judicially enforced. *See Johnson, supra.* Rather, section 12–62–403, as the title of the statutory subtitle suggests, grants a "privilege" to members of the organized militia serving on military duty.

■ Moreover, this court has long held that matters of public policy are generally within ₁₀the purview of the legislature. The resolution of questions of policy "is addressed in a democracy to the policy-making branch of government, the General Assembly, and it is not for the courts to make a statute say something that it clearly does not." *King v. Ochoa*, 373 Ark. 600, 602, 285 S.W.3d 602, 604 (2008). We hold that the statute at issue here, insofar as it provides for members of the organized militia a right not granted to those to whom the statute does not apply, is rooted in public policy. Other jurisdictions have held similarly. *See, e.g., Murrey v. Murrey*, 216 Cal. 707, 16 P.2d 741 (1932); *Nw. Cas. & Sur. Co. v. Conaway*, 210 Iowa 126, 230 N.W. 548 (1930); *Land Title & Trust Co. v. Rambo*, 174 Pa. 566, 34 A. 207 (1896). To hold that the General Assembly's enactment of section 12–62–403 was an impediment to this court's rulemaking authority would be to impede upon the legislature's policy-making authority. This we will not do.

We note the circuit court's concern that section 12–62–403 appears to provide no alternative procedure by which members of the organized militia may be timely served with civil process. In 2003, however, the General Assembly passed the Arkansas Soldiers' and Airmen's Civil Relief Act, codified at Arkansas Code Annotated sections 12–62–701 through 12–62–718 (Repl.2003). The Act is applicable to a soldier, airman, or the spouse of a soldier or airman of the Arkansas National Guard who is ordered into the active military service of the State of Arkansas by the Governor for a period of more than 180 continuous days, under either state law or the provisions of Title 32 of the United States Code. Ark.Code Ann. § 12–62–704. Under the Act, a statute of limitations may be tolled ₁₁for reason of the military service of a plaintiff or defendant:

> The period of military service is not included in computing any period limited by law, rule, or order for bringing an action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his or her heirs, executors, administrators, or assigns, whether the cause of action or the right or privilege to institute the action or proceeding has accrued before or during the period of military service.

*Id.* § 12–62–712. Pursuant to this statute, the exemption from civil process granted to members of the organized militia in section 12–62–403 will not affect the ability of a plaintiff to timely institute suit.

■ For these reasons, we hold that section 12–62–403 is constitutional.[2] It is substantive legislation and thus does not violate the separation-of-powers doctrine. The circuit court's ruling to the contrary and its denial of Cato's motion to dismiss were erroneous on the face of the record. Furthermore, because the parties do not dispute that service of process was improper under section 12–62–403, the circuit court's continued exercise of jurisdiction over Cato is a plain, manifest, clear, and gross abuse of discretion. Thus, Cato has established that he meets the first requirement for a writ of certiorari. *See Conner, supra.*

We further hold that Cato is without an adequate alternative remedy, as the circuit court's refusal to grant his motion to dismiss was not a final, appealable order.

---

**2.** Because we agree with Cato's arguments pursuant to article 4 and amendment 80 of the Arkansas Constitution, we need not address his argument that the issue falls under the Rule 81(a) exception to the applicability of the civil procedure rules. *See* Ark. R. Civ. P. 81(a) (2009).

*See Jordan v.* ⌐12*Circuit Court of Lee County,* 366 Ark. 326, 332, 235 S.W.3d 487, 492 (2006). Moreover, this court has held that we will not grant writs of certiorari in situations where the result would effectively enforce piecemeal appellate review. *Id.* As in *Jordan,* this case is an example of "the precise situation where a failure to grant the writ *would* result in piecemeal litigation and, thus, the only adequate remedy is this writ." *Id.* (emphasis in original). The effect of our decision today on the constitutionality of section 12–62–403 is that Lawrence's service of process on Cato was wholly invalid. Therefore, the circuit court was without jurisdiction over Cato. *See, e.g., Raymond v. Raymond,* 343 Ark. 480, 484, 36 S.W.3d 733, 735 (2001) (noting well-settled Arkansas law that service of valid process is necessary to give a court jurisdiction over a defendant). "We will not send back a case that should not have been allowed to proceed in the first place, let the circuit court decide the case, and then wait for it to be appealed again." *Jordan,* 366 Ark. at 333, 235 S.W.3d at 492.

Because the circuit court acted in excess of its jurisdiction and committed a plain, manifest, clear, and gross abuse of discretion, and because Cato is left without an adequate alternative remedy, we hold that relief in the form of a writ of certiorari is appropriate.

Writ of prohibition denied; writ of certiorari granted.