Hannah, C.J., and Wood, J., concur in part and dissent in part. Baker, Goodson, and Hart, JJ., concur in part and dissent in part. Rhonda K. Wood, Justice, concurring in part and dissenting in part. Because I would uphold all of Act 1413 as constitutional, I would reverse the circuit court’s order in its entirety. Thus, I concur with those parts of the majority’s opinion regarding sections 3, 11, |M15, and 21 of Act 1413. I also concur with the balance of the majority’s holding regarding section 18. But I dissent from its holding on subsection (b)(7) of section 18 and its holding on section 13. These two provisions — the two-county signature prohibition and the petition-gathering dead period — are consistent with the General Assembly’s duty under article 5, section 1, of the Arkansas Constitution to prevent fraudulent petition-gathering practices. The General Assembly shall enact laws “prohibiting and penalizing perjury, forgery, and all other felonies or fraudulent practices, in the securing of signatures and filing of petitions.” Ark. Const, art. 5, § 1. This is a broad mandate, and combined with the deference this court must give to laws passed by the General Assembly, the challengers to Act 1413 must meet a high bar before they can overcome the Act’s presumptive constitutionality. It is well settled that there is a presumption of validity attending every consideration of a statute’s constitutionality. Cato v. Craighead Cnty. Cir. Ct., 2009 Ark. 334, 322 S.W.3d 484. Before an act will be held unconstitutional, the incompatibility between it and the constitution must be clear. Id. Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality. Id. The heavy burden of demonstrating the unconstitutionality is upon the one attacking it. Id. When possible, we will construe a statute so that it is constitutional. Id. Applying these principles to the two-county signature prohibition and petition-gathering dead period, I find that these two provisions pass constitutional muster. Subsection (b)(7) of section 18 provides that “[a] petition part and all signatures appearing on the petition part shall not be counted ... if ... the petition part ... clearly and unmistakably contains signatures of petitioners from more than one (1) county.” Ark. Code [2iAnn. § 7-9-126(b)(7) (“two-county signature prohibition”). The two-county signature prohibition is in line with the rule announced in Sturdy v. Hall, 204 Ark. 785, 164 S.W.2d 884 (1942). In Sturdy, at least some of the over 10,000 signatures submitted on a petition were forged. A challenge was raised, which asserted that any petition part that included a forged signature should not be counted. We rejected this argument and held that if the forged signatures “were not done with the wrongful intent and with connivance between the [petitioner] and the circulator, we think only the particular name wrongfully signed should be stricken and not all the names appearing on that petition.” Id. at 791, 164 S.W.2d at 887. The majority mistakenly uses Sturdy to strike the two-county signature prohibition; instead, this provision survives under Sturdy because, in this Act, the sponsors have the ability to cure the defect. The Act provides that a petition part with signatures from petitioners living in more than one county shall not be counted “unless each signature of a petitioner from another county is clearly stricken before the filing of the petition.” Ark. Code Ann. § 7 — 9—126(b)(7). Thus, an entire petition part would be invalid not because a petitioner signed the wrong sheet — it would be invalid because the sponsor submitted a petition part without striking signatures from other counties. This provision is no different from other provisions in the same section. For example, section 18 also has provisions (which the majority has upheld) prohibiting the counting of petition parts if the petition part is not signed by the canvasser, if the canvasser is paid and is not registered with the Secretary of State, or if the canvasser fails to properly notarize the verification. Ark. Code Ann. § 7-9-126(b)(2) — (4). If any of these situations occur, 122then a petitioner’s otherwise valid signature will not be counted. But just like the two-county signature prohibition, the reason the valid signature will not be counted is the sponsor’s or canvasser’s failure to comply with the law. In short, there is no constitutional difference among section 18’s various provisions regulating the counting of signatures, and it is inconsistent for the majority to treat these provisions differently. I also fail to see any constitutional defect in section 13. This provision provides that after the petition has been filed, a canvasser shall not circulate a petition, or collect, solicit, or obtain any additional signatures for the filed petition until the Secretary of State determines the sufficiency of the petition. Ark. Code Ann. § 7 — 9—111 (a)(3) (“petition-gathering dead period”). The rationale for this provision is to ensure that each petition drive has an equal amount of time — thirty days — to cure any signature shortfall. If canvassers were able to gather signatures while the Secretary makes an initial count, the amount of time to gather signatures after submission would vary depending on how long it took the Secretary to determine the petition’s initial sufficiency. The majority rejects this rationale, holding that the provision “serves no reasonable • purpose in either furthering the rights- guaranteed in article 5, § 1 or assisting the people in exercising their rights to refer or initiate legislation.” This response, however, answers the wrong question. The right question is whether this provision is consistent with article 5, § l’s mandate to the General Assembly to enact laws “prohibiting ... fraudulent practices.” If the Secretary were able to modify the cure period on his or her own, the integrity of the petition-gathering process would be threatened. For example, the Secretary could take longer to count petitions | gjOn causes he or she was in favor of. These petitions would therefore have thirty days, plus however long the Secretary took to determine the petition’s initial sufficiency, to cure any signature shortfall. Conversely, the Secretary could quickly count petitions he or she disagrees with, compressing the cure time for these disfavored petitions. But by making the cure period consistent, the General Assembly has ensured that the Secretary will treat all petitions equally. Moreover, without the petition-gathering dead period, a sponsor who is running short of time would be encouraged to deliberately include fraudulent petition parts in order to lengthen the time it would take the Secretary to determine the number of valid signatures, thus expanding the amount of time the sponsor would have to continue collecting signatures. A fraudulent act is defined as “conduct involving bad faith, dishonesty, a lack of integrity, or moral turpitude.” Black’s Law Dictionary 111 (10th ed. 2014). By preventing the Secretary from acting in bad faith and discouraging sponsors from fraudulently increasing their petition’s signatures, the petition-gathering dead period is entirely consistent with article 5, § l’s charge to the General Assembly to pass laws preventing fraudulent practices. For these reasons, I would hold that all of Act 1413 is constitutional. Hannah, C.J., joins.