Robin F. Wynne, Justice, concurring in part and dissenting in part. | ail fully-agree with the majority’s analysis of the cross-appeal; however, I cannot agree that Act 139 of 2013, the Method of Execution Act (MEA), has remedied the separation-of-powers violations outlined in Hobbs v. Jones, 2012 Ark. 293, 412 S.W.3d 844, and I would affirm on direct appeal. Therefore, I respectfully concur in part and dissent in part. This court has long held that matters of public policy are generally within the purview of the legislature. Archer v. Sigma Tau Gamma Alpha Epsilon, Inc., 2010 Ark. 8, at 8, 362 S.W.3d 303, 308 (citing Cato v. Craighead Cnty. Cir. Court, 2009 Ark. 334, 322 S.W.3d 484). As noted by the majority, the legislative branch has the power and responsibility to proclaim the law through statutory enactments. Dep’t of Human Servs. & Child Welfare Agency Review Bd. v. Howard, 367 Ark. 55, 66, 238 S.W.3d 1, 8 (2006) (quoting Federal Express Corp. v. Skelton, 265 Ark. 187, 197-98, 578 S.W.2d 1, 7 (1979)). While the separation-of-powers doctrine prohibits the General Assembly from delegating its power to proclaim the law to another branch of government, this court has held that discretionary power may be delegated by the legislature to a state agency as long as reasonable guidelines are provided. Bakalekos v. Furlow, 2011 Ark. 505, at 8, 410 S.W.3d 564, 571. This guidance must include appropriate standards by which the administrative body is to exercise. this power. Id. The above has long been the law in this state, and this court acknowledged as much in Venhaus v. State ex rel. Lofton, 285 Ark. 23, 28, 684 S.W.2d 252, 255 (1985). In Venhaus, the statute at issue provided that the exact amounts of salaries of probation officers were to be set by a circuit judge within the range of $15,000 to $20,000. We held that because the 121 statute at issue did not provide for grades or steps based upon training, education, experience, or anything else to be used in the salary determination, it vested unbridled discretion in the judge and contravened the separation-of-powers doctrine. Id. at 28, 684 S.W.2d at 255. Similarly, in Walden v. Hart, 243 Ark. 650, 420 S.W.2d 868 (1967), this court held that a provision of the then existing Uniform Motor Vehicle Code permitting the chief of police to authorize or designate certain ambulances as emergency vehicles was unconstitutional for delegating legislative powers. The statute at issue provided no standards for the chief of police to consider, and this court rejected the notion that two provisions in other statutes established sufficient standards for the licensing of an emergency vehicle, writing, “But what other factors are to be considered by him? The legislation does not answer that question. That vacuum creates the constitutional defect.” Id. at 654, 420 S.W.2d at 871. In both cases, the legislature had provided basic parameters (a salary range in Venhaus and requirements that emergency vehicles be equipped with a siren and flashing red lights in Walden), but this court held that the statutes still violated our separation-of-powers doctrine. Venhaus and Walden should inform our decision in the present case. The crux of this appeal is whether the legislature has provided the requisite “reasonable guidelines” for the ADC to follow in carrying out the death penalty in this state. In Hobbs v. Jones, in ruling the MEA of 2009 unconstitutional, this court wrote, It is evident to this court that the legislature has abdicated its responsibility and passed to the executive branch, in this case the ADC, the unfettered discretion to determine all protocol and procedures, most notably the chemicals to be used, for a state execution. The MEA fails to provide reasonable guidelines for the selection of chemicals to be used during lethal injection and it fails to provide any general policy with regard to the lethal-injection procedure. Despite the fact that other states may | ^analyze, similar statutes differently according to their respective constitutions, we are bound only by our own constitution and our own precedent. Hobbs v. Jones, 2012 Ark. 293, at 15, 412 S.W.3d 844, 854. Turning now to the MEA of 2013, I find the same problems that this court found in Hobbs v. Jones. The changes that the General Assembly made to the statute following our decision include specifying the class of drugs to be used, stating a general policy goal, and requiring that the equipment used in the lethal injection be sterilized and prepared in a manner that is safe and commonly performed in connection with the intravenous administration of drugs of that type. As explained below, these changes fail to provide the type of reasonable guidelines required under our separation-of-powers jurisprudence. Regarding the chemicals to be used, the MEA of 2013 provides that the ADC is to first administer a benzodiazepine, followed by “a barbiturate in an amount sufficient to cause death.” Thus, the legislature has narrowed the lethal drug to be used to any drug in the class of drugs known as barbiturates.[1] However, as explained in the affidavits submitted by the Prisoners in support of their motion for summary judgment, the term “barbiturates” refers to a class of drugs with widely varying effects on the body. According to the affidavits, barbiturates act to depress a person’s central nervous system. They are classified depending on the length of time of the drug’s onset and how long those effects last; they are generally | ^¡classified as ultra-short-acting, short-acting, intermediate- or medium-acting, or long-acting. Ultra-short-acting barbiturates can cause a person to lose consciousness within seconds, while a long-acting barbiturate may take considerably longer to take effect. Given the wide range of barbiturates, the General Assembly’s delegation to the ADC the decision of which particular type of barbiturate — ultra-short-acting, short-acting, intermediate-acting, or long-acting — to use in carrying out lethal injections, without providing reasonable guidelines, violates our separation-of-powers doctrine. The general policy provided by the General Assembly with regard to the MEA is contained in Act 139’s legislative findings, which provide in pertinent part, “The General Assembly finds it necessary to provide a means of carrying out the sentence of death while also complying with the constitutional prohibition on cruel and unusual punishment.” Act of February 20, 2013, No. 139, § 1(a), 2013 Ark. Acts 554, 554. In Hobbs v. Jones, we rejected the ADC’s argument that reasonable guidance could be found in the prohibition on cruel and unusual punishment in the Eighth Amendment and our state counterpart, Ark. Const, art. 2, § 9. We held that where the General Assembly has delegated its legislative authority to another branch of government but failed to provide sufficient guidance, “the doctrine of separation of powers has been violated and other constitutional provisions cannot provide a cure.” Id. at 15, 412 S.W.3d at 854. Here, the General Assembly’s finding that it is necessary to comply with the constitutional prohibition on cruel and unusual punishment does not provide any additional guidance to the ADC beyond that which the federal and state constitutions already provide! ¾, It does not cure the separation-of-powers violation inherent in allowing the ADC, part of the executive branch, the unfettered discretion to determine how the death penalty will be carried out — subject only to the requirements that it be by intravenous injection of a barbiturate, preceded by a benzodiazepine, and within the constraints of the Eighth Amendment. I note that other states have seen fit to provide the kind of reasonable guidelines that Act 139 lacks. For example, Ohio law provides for “a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death.” Ohio Rev.Code Ann. § 2949.22(A) (emphasis supplied). Kansas law provides that the death penalty shall be “by intravenous injection of a substance or substances in a quantity sufficient to cause death in a swift and humane manner.” Kan. Stat. Ann. § 22-4001(a) (emphasis supplied). In sum, I do not believe the General Assembly has provided the necessary guidance to the ADC in choosing the method to be used in carrying out capital punishment in this state. As it now stands, the ADC, not the General Assembly, will decide fundamental questions regarding how a sentence of death-will be carried out. I concur in part and dissent in part. Hannah, C.J., and Danielson, J., join. . I note that Act‘774 of 1983, which governed capital-punishment procedures in Arkansas from 1983 until 2009, required “a continuous intravenous injection of a lethal quantity of an ultra-short-acting barbiturate in combination with a chemical paralytic agent.” The current version of the MEA requires neither that the injection be continuous, nor that the barbiturate be ultra-short-acting.