Dennis E. WINSTON *v.* Brenda ROBINSON and
The STATE of Arkansas

80-82                                          606 S.W. 2d 757
Supreme Court of Arkansas
Opinion delivered November 3, 1980

*Ball & Mourton*, by: *Kenneth R. Mourton*, and *Ray & Donovan*, by: *Carrold E. Ray*, for appellant.

Lee County Child Support Enforcement Unit, by: *Doddridge M. Daggett*, and *Mays & Crutcher*, by: *Zimmery Crutcher*, for appellees.

GEORGE PIKE, JR., Special Justice. This appeal is brought by Dennis E. Winston from a judgment of the Lee County Circuit Court finding that he was the father of Appellee Brenda Robinson's child, Dennis E. Winston, Jr., awarding $135 per month for past support for the six years from birth to date of trial ($9,720), and $350 per month future support until the child reaches sixteen, pursuant to the Arkansas bastardy statutes. The appeal presents questions of statute of limitations, admissibility of blood tests, propriety of the appeal from the county court to the circuit court, and ex-

cessiveness of the amount awarded. The case is reversed and remanded for a new trial for the reasons stated below.

Winston does not contend that the evidence was insufficient to support the jury's verdict finding him to be the father of Dennis Winston, Jr. He admitted that he had had sex with Brenda Robinson during October and November of 1972, when the child was conceived. She was a junior in Marianna High School at that time, a cheerleader, and he was a senior, a football player. There was testimony that they were "the golden couple", "a flashy couple", dating frequently, if not steadily, during this period of time. She testified they had first had sex in April of 1971, and that she dated no other person besides Winston while she was in high school. The child was born on July 17, 1973, and given his present name, Dennis Winston, Jr.

In 1973, she applied for and began receiving assistance from the State for child support, naming Winston as the father. In 1975 and again in 1977, the State wrote Winston demanding that he contribute to the support of the child, which he did not, and finally, on February 7, 1978, this action was begun by Brenda Robinson and the State of Arkansas by filing a complaint in the county court of Lee County, pursuant to Ark. Stats. § 34-701, *et seq.* At that time Winston was employed as a professional football player by the Pittsburg Steelers, and Brenda Robinson was employed as a singer in a rock music band headquartered in Little Rock.

Following a trial before a referee appointed by the County Judge, judgment was entered by the County Judge finding that Winston was the father of the child and awarding $90 per month for support from July 17, 1973, to July 17, 1978, and $125 per month beginning August 15, 1978. A notice of appeal was filed by the State of Arkansas on the issue of back child support, but not the issue of paternity, plus the issue of whether the County Judge correctly ruled that the State of Arkansas was not a proper party. Winston also filed a notice of appeal from the judgment. Brenda Robinson filed no appeal. On the trial *de novo* before a jury in the Circuit Court, a verdict was returned finding that Winston was the father of Brenda Robinson's child. Immediately after the verdict, the

Court held a hearing to determine the amount of the support and fixed the amount at $135 per month for the past six years and $350 per month for the future. Judgment was entered accordingly, and Winston filed this appeal.

For reversal, Winston contends: (1) the claim is barred by the statute of limitations; (2) the Trial Court erred in allowing the introduction of blood tests to establish that Winston was the father; (3) the Trial Court erred in permitting the award to be increased over that of the County Judge since Brenda Robinson filed no separate appeal; (4) the amount of the award was excessive.

(1) The Statute of Limitations

The Trial Court held that the action was not barred by a statute of limitations since the complaint was filed within five years from the birth of the child, and the Trial Court applied the five-year statute set forth in Ark. Stats. § 37-213. Winston contends that the three-year statute of limitations set forth in Ark. Stats. § 37-206 should govern, thus barring the action, or, in the alternative, that if the five-year statute is applied, the time should begin to run from the date of conception, which was more than five years prior to the filing of the suit.

This Court holds that the three-year statute is the applicable statute, but that the statute does not bar the entire cause of action, only support for the period more than three years prior to the filing of the complaint.

The bastardy statutes of Arkansas contain no specific statute of limitations. However, in the early case of *Davis* v. *Herrington*, 53 Ark. 5, 13 S.W. 215 (1890) this Court applied the three-year statute of limitations to a case involving a promise to pay support for an illegitimate child and allowed recovery for support only for the three years prior to filing the complaint. The court pointed out that by common law the mother, and not the putative father, of an illegitimate child was bound to maintain the child, but that the Arkansas statute conferred upon the mother of such a child the right to compel the father to contribute to the support of the child.

Ark. Stats. § 37-206 has been applied to obligations which exist only because of a statutory provision. *Nebraska National Bank* v. *Walsh*, 68 Ark. 433, 59 S.W. 952 (1900).

This three-year statute has also been applied in the similar situation of a divorce decree which makes no provision for child support. In *Wilder* v. *Garner*, 235 Ark. 400, 360 S.W. 2d 192 (1962), this Court distinguished earlier cases, relied upon by Brenda Robinson and the State, which had applied the five-year statute in cases where the obligation to support was set forth in the divorce decree. The Court stated:

> But in the present case there was no provision in the original divorce decree for the support, and the obligation on the father is one "express or implied, not in writing." (Section 37-206, Ark. Stats.); and would, therefore, come within the 3-year statute. See *Davis, Admr.* v. *Herrington*, 53 Ark. 5, 13 S.W. 215. (235 Ark. 400 at 403)

Although the action in Wilder was brought more than three years after the divorce decree, this Court refused to bar the entire claim, but rather allowed recovery for support during the three years prior to the filing of the complaint for the reason that:

> . . .as long as the children are minors, the obligation is a continuing one on the father to support the children, and during such period of minority limitations could not bar all amounts. (235 Ark. 400 at 402)

We hold, therefore, that the Trial Court erred in awarding recovery for support for the period more than three years prior to the filing of the complaint on February 7, 1978.

(2) Admissibility of Blood Tests to Establish Paternity.

The Trial Court allowed into evidence two blood tests which did not exclude Winston as being the father, for the purpose of showing that he was the father. The introduction of such tests was admittedly in violation of the provision in the bastardy statutes which states:

Ark. Stats. 34-705.1. *Trial — Blood tests as admissible evidence.* — Whenever it shall be relevant to the prosecution or the defense in an illegitimacy action, the trial court may direct that the husband, wife and child submit to one (1) or more blood tests to determine whether or not the defendant can be *excluded* as being the father of the child. The results of the tests shall be *receivable in evidence, but only* in cases where definite *exclusion* is established. (Emphasis added.)

Appellees Brenda Robinson and the State argue that the introduction of the blood tests into evidence to establish paternity, rather than non-paternity, was proper because the statute set forth above was repealed by the clause repealing "all laws in conflict herewith" which was a part of the statute adopting the Uniform Rules of Evidence. (Ark. Stats. § 28-1001 *et seq.* [Section 2, Acts of 1975 (Extended Session 1976) No. 1143]). The Court disagrees. The repealing clause specifically listed statutes that were repealed by the Uniform Rules of Evidence. Included among those statutes was one provision of the bastardy statutes. Ark. Stats. § 34-712, relating to the admissibility of the dying declarations of the mother, but the repealing clause conspicuously did not mention as being repealed the portion of the bastardy statutes dealing with the admissibility of blood tests, which is the subject of this litigation.

Under well-established rules of statutory construction, a statute of general nature does not repeal an earlier statute on the same subject of a specific nature, unless there is a plain conflict between the two. *Goggin* v. *Ratchford*, 217 Ark. 180, 229 S.W. 2d 130 (1950); *Faver* v. *Golden*, 216 Ark. 792, 227 S.W. 2d 453 (1950); *Kendall* v. *Ramsey*, 179 Ark. 984, 19 S.W. 2d 1020 (1929). The Court in the *Kendall* case stated:

> In the application of the rule, this court has held that a general affirmative statute does not repeal a prior particular statute or the particular provisions of a prior statute on the same subject, unless there is an invincible repugnancy between the two. (179 Ark. 984 at 987)

Here, there is no such conflict. Rule 402 of the Uniform

Rules of Evidence acknowledges that other statutes may render inadmissible evidence that otherwise would be admissible under the rules. Rule 402 states:

> All relevant evidence is admissible, *except as otherwise provided by statute* or by these rules or by other rules applicable in the courts of the State. (Emphasis added)

Even with the enactment of the Uniform Rules of Evidence, the General Assembly still may have enacted or may later enact specific statutes dealing with the admissibility of evidence. Such statutes legitimately express the public policy of the State on the admissibility of evidence, for example, that may be of dubious reliability.

The desirability of dealing specifically with certain types of evidence is demonstrated by the present case in which the doctor of philosophy through whom the blood tests were introduced admitted in his report that even the average of the tests which he calculated to show that there was "an 88 percent greater chance that Mr. Winston is the father of Dennis, Jr., as compared with any other man of the same race," was not of any significance. He stated "a probability this low is usually not considered to be of any significance." Yet both tests were allowed into evidence in violation of the statute.

The witness through whom the reports were introduced frankly admitted that there was a vast difference between the reliability of such blood tests to show that a man was *not* the father of the child, for which purpose the tests are highly reliable (the witness would give million to one odds) as opposed to attempting to prove that a man *is* the father, concerning which all the test can say is that he is one among others who may be. While an 88 percent greater chance might not be of any significance to the doctor of philosophy, such a number could be expected to influence laymen in the field of blood testing and could, therefore, be highly prejudicial before a jury or court.

(3) The Propriety of the Appeal from the County Court.

Winston next contends that the Trial Court erred in awarding an amount greater than that allowed by the County

Judge for the reason that no appeal was filed by Brenda Robinson from the judgment of the county court. The Court finds this contention to be without merit. The appeal to the Circuit Court is a *de novo* trial, not a review of the evidence below. Ark. Stats. § 34-711 provides:

> *Trial de novo on appeal.* — The circuit court shall hear the case *de novo*, and make such orders and render such judgment on appeal as the law and evidence require under this act.

Dennis Winston appealed from the judgment of the county court in its entirety, thus raising the issues of paternity as well as support. He thus opened the issue of support for new evidence and is not in a position to complain that the jury arrived at a figure on the evidence before it that happened to be different, in this case larger, than the amount the County Judge awarded based upon the evidence before the referee.

In addition, an appeal was taken by the State of Arkansas from the judgment of the county court, in accordance with the statute allowing the appeal which provides as follows:

> Ark. Stats. 34-710. *Duty of prosecuting attorney.* — The attorney prosecuting for the circuit shall conduct the suit on behalf of the State on all appeals to the circuit court in cases of bastardy.

The mother is a proper party to the suit, but the State is entitled to prosecute the appeal. As this Court pointed out in *Epperson* v. *Sharp*, 222 Ark. 456, 261 S.W. 2d 267 (1953),

> First, appellant contends that Jewell Dean Sharp is not a proper party to the litigation and cannot maintain the suit. It is true that the statutes provide that the prosecuting attorney shall conduct the suit on behalf of the State on all appeals to circuit court in cases of bastardy. Ark. Stats. § 34-710. However, this does not mean that the mother of the child cannot have an attorney to represent her nor does it mean that the suit

must be dismissed if the prosecuting attorney does not appeal in the case. (222 Ark. 456 at 457.)

Thus, the issue of the amount of support was properly brought before the Circuit Court, both by Winston and the State of Arkansas, and Brenda Robinson was a proper party to that proceeding. None of the parties were bound, and will not be bound on any trial after this remand, by the amount found by the County Court.

(4) Excessiveness of the Award

Since the case is being remanded for a new trial, it is not necessary to reach the issue of the excessiveness of the award for support. If the case should be presented to this Court on a second appeal, the amount would have to be reviewed in the light of the evidence introduced at the new trial.

The judgment is, therefore, reversed and the cause remanded to the Circuit Court of Lee County for further proceedings consistent with this opinion.

MR. JUSTICE MAYS did not participate.