Cite as 2021 Ark. 140
# SUPREME COURT OF ARKANSAS
No. CV-20-492

| | |
|---|---|
| SAMANTHA EDWARDS, INDIVIDUALLY AND AS A SPECIAL ADMINISTRATRIX OF THE ESTATE OF WILLIAM BOBBY WRAY EDWARDS, DECEASED, AND ARLEIGH GRAYCE EDWARDS, DECEASED; AND AS PARENT AND NEXT FRIEND FOR PEYTON HALE, A MINOR<br><br>PETITIONER/PLAINTIFF<br><br>V.<br><br>ERIC JAMES CORNELL THOMAS AND MCELROY TRUCK LINES, INC.<br><br>RESPONDENTS/DEFENDANTS | **Opinion Delivered** June 17, 2021<br><br>CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS, TEXARKANA DIVISION<br><br><br>HONORABLE SUSAN O. HICKEY, CHIEF JUDGE<br><br><br><u>CERTIFIED QUESTION ANSWERED</u>. |

**ROBIN F. WYNNE, Associate Justice**

This case presents a question of law concerning the failure to comply with the Child

Passenger Protection Act, Ark. Code Ann. §§ 27-34-101 et seq. (Repl. 2014), which was

certified to this court by the United States District Court for the Western District of

Arkansas in accordance with Arkansas Supreme Court Rule 6-8. The certified question is

as follows:

> Under the facts of this case, whether Arkansas Code Annotated section 27-
> 34-106(a) violates the separation-of-powers doctrine under article 4, section
> 2, and Amendment 80, section 3, of the Arkansas Constitution.

As explained below, we answer the certified question in the negative and hold that Arkansas

Code Annotated section 27-34-106(a) does not violate the separation-of-powers doctrine.

As set out in the certifying court's order, the facts relevant to the certified question are as follows:

> This wrongful death and survival action arose out of an August 2, 2018, two-vehicle accident that took place in Howard County, Arkansas. Defendant Eric James Cornell Thomas failed to obey a stop sign while driving a tractor trailer in the course and scope of his employment with Defendant McElroy Truck Lines, Inc. The tractor Mr. Thomas was operating struck a pickup truck driven by William Bobby Wray Edwards, in which Mr. Edwards' daughter, Arleigh, and stepson, Peyton, were riding. Following the initial impact, the pick-up struck a tree. Arleigh was then ejected from the cab of the pick-up. Mr. Edwards and Arleigh were killed as a result of the accident.
>
> At the time of the collision, Arleigh was two years old. Plaintiff will offer proof at trial that at the time of the collision, Arleigh weighed less than sixty pounds. Arleigh was not restrained in a child passenger safety seat or any other passenger restraint system at the time of the collision. A "Cosco Scenera Next" brand child safety seat was in the back seat of the pick-up at the time of the collision.
>
> For purposes of this civil action, Defendant Thomas admits he was negligent and his negligence was the cause of the collision between the tractor and the pick-up. Defendant McElroy admits the same and admits it is vicariously liable for any injuries proximately caused by Mr. Thomas's negligence. However, both defendants allege (as a defense) fault on the part of Mr. Edwards for failing to put or maintain Arleigh in a child passenger safety seat. Defendants will offer expert biomechanical proof at trial that, had Arleigh been properly restrained, then she would not have been ejected and would have survived the accident.
>
> Pursuant to Ark. Code Ann. § 16-111-111, Defendants have given notice to the Arkansas Attorney General of their challenge to the constitutionality of Ark. Code Ann. § 27-34-106(a) insofar as it would bar or limit admission of evidence at trial of the failure to use a child passenger safety seat.

Mr. Edwards's wife, Samantha Edwards (plaintiff), filed suit in February 2019, individually and as special administratrix of the estate of William Bobby Wray Edwards, deceased, and Arleigh Grayce Edwards, deceased, and as parent and next friend for Peyton Hale, a minor. Defendants' answer asserted fault on the part of Edwards for failing to put Arleigh in a child-safety seat, and plaintiff then filed a motion for partial summary judgment with respect to

comparative fault and nonparty fault related to child-safety restraint nonuse. She argued that the defense was precluded as a matter of law by Arkansas Code Annotated section 27-34-106(a) and *Potts v. Benjamin*, 882 F.2d 1320 (8th Cir. 1989). In response, defendants argued that the statute is an unconstitutional encroachment on the judiciary's exclusive power to make rules of pleading, practice, and procedure.

We begin our analysis with an overview of the Child Passenger Protection Act (CPPA). In passing the CPPA, the General Assembly recognized "the problems, including death and serious injury, associated with unrestrained children in motor vehicles" and sought to "encourage and promote the use of child passenger safety seats." Ark. Code Ann. § 27-34-102. With certain exceptions not applicable here, *see* Ark. Code Ann. § 27-34-105, the CPPA imposes the following requirements on drivers of motor vehicles with regard to child passengers:

> (a) While operating a motor vehicle on a public road, street, or highway of this state, a driver who transports a child under fifteen (15) years of age in a passenger automobile, van, or pickup truck, other than one operated for hire, shall provide for the protection of the child by properly placing, maintaining, and securing the child in a child passenger restraint system properly secured to the vehicle and meeting applicable federal motor vehicle safety standards in effect on January 1, 1995.

> (b) A child who is less than six (6) years of age and who weighs less than sixty pounds (60 lbs.) shall be restrained in a child passenger safety seat properly secured to the vehicle.

> (c) If a child is at least six (6) years of age or at least sixty pounds (60 lbs.) in weight, a safety belt properly secured to the vehicle shall be sufficient to meet the requirements of this section.

3

Ark. Code Ann. § 27-34-104. Any person who violates the CPPA is subject to a fine of not less than twenty-five dollars nor more than one hundred dollars. Ark. Code Ann. § 27-34-103. The provision at issue here, section 27-34-106, provides:

>    (a) The failure to provide or use a child passenger safety seat *shall not be considered*, under any circumstances, *as evidence of comparative or contributory negligence*, nor shall failure be admissible as evidence in the trial of any civil action with regard to negligence.

>    (b) Neither shall the failure to provide or use a child passenger safety seat be considered, under any circumstances, as evidence in any prosecution for negligent homicide.

(Emphasis added.)

This court recognizes the existence of a strong presumption that every statute is constitutional. *Ark. Dep't of Hum. Servs. v. Cole*, 2011 Ark. 145, at 8, 380 S.W.3d 429, 434. The burden, therefore, of rebutting a statute's constitutionality is on the party challenging the legislation. *Id.* An act should be struck down only when there is a clear incompatibility between the act and the constitution. *Id.*

Regarding separation of powers, our state constitution provides that "[n]o person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Ark. Const. art. 4, § 2. Furthermore, amendment 80, section 3 to the Arkansas Constitution instructs that the Arkansas Supreme Court "shall prescribe the rules of pleading, practice and procedure for all courts." Accordingly, rules regarding pleading, practice, and procedure are the responsibility of this court. *See Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, at 8, 308 S.W.3d 135, 141. The legislative branch of the state government has the power

4

and responsibility to proclaim the law through statutory enactments. *Dep't of Hum. Servs. v. Howard*, 367 Ark. 55, 66, 238 S.W.3d 1, 8 (2006). This court has stated that substantive law is "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties," while procedural law is defined as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." *Summerville v. Thrower*, 369 Ark. 231, 237, 253 S.W.3d 415, 419–20 (2007) (quoting *Black's Law Dictionary* 1443, 1221 (7th ed. 1999)). Here, plaintiff argues that Arkansas Code Annotated section 27-34-106(a) is a substantive rule of law, while defendants contend that it is procedural and therefore unconstitutional in that it violates the separation-of-powers doctrine.

In *Mendoza v. WIS International, Inc.*, 2016 Ark. 157, 490 S.W.3d 298, this court distinguished section 27-34-106(a) from the seat-belt statute at issue in that case, which was held to violate the separation-of-powers doctrine. This court wrote: "The seat-belt statute states that evidence of nonuse may not be admitted, whereas section 27-34-106 provides that the failure to place children in child-restraint seats may not be admitted as evidence of comparative or contributory negligence." *Mendoza*, 2016 Ark. 157, at 7, 490 S.W.3d at 302. This court further noted that the language of the statutes had been nearly identical, but in 1995 the legislature removed from the seat-belt statute the language "shall not be considered under any circumstances as evidence of comparative or contributory negligence" and "with regard to negligence." Accordingly, *Mendoza* supports a conclusion that section 27-34-106(a) is a rule of substantive law.

In the present case, defendants argue that section 27–34–106(a) is a legislative attempt to deprive trial courts of their authority to control the admission of evidence. Defendants point to the plain language of the statute, which indeed speaks partly in terms of the admission of evidence. Plaintiff points out that the substantive law always has at least some effect on what evidence is admissible because the substantive law determines what facts are relevant to liability or to defenses. We acknowledge that there are both substantive and procedural aspects to the statute at issue. On the whole, however, we agree with plaintiff that section 27–34–106(a) is a legislative pronouncement that failing to use a child-safety seat is not a negligent act and therefore cannot be used to compare the injured plaintiff's fault to the fault of the defendant. Accordingly, we hold that section 27–34–106(a) is more substantive than procedural, and it does not constitute a violation of the separation-of-powers doctrine.

Certified question answered.

WOOD, WOMACK, and WEBB, JJ., and SPECIAL JUSTICE MARK D. WANKUM concur.

WOMACK and WEBB, JJ., and SPECIAL JUSTICE MARK D. WANKUM concur in part and dissent in part.

KEMP, C.J., not participating.

**RHONDA K. WOOD, Justice, concurring**. I join the majority opinion: the statute is constitutional because it is substantive. I would overrule *Mendoza v. WIS International,*

*Inc.*, for the reasons set forth in my dissenting opinion in that case, although today we reach no consensus on this reasoning.[1]

**MARK WANKUM, Special Justice, concurring**. This statute and the arguments of the parties epitomize the difficulties posed by the bright-line rule announced in *Johnson* as well as its limits. While I concur in the Court's judgment, I write separately to point out the foundational flaw in *Johnson* that this Court must explicitly address and correct.

The statute in question undoubtably reflects a substantive policy determination of the General Assembly regarding the consequences and implications of the use of child passenger safety seats. It reflects a legislative determination of legal liability bound to arise in tort litigation with evidentiary consequences.

Both parties argue that *Johnson* controls; however, the majority fails to directly engage this precedent, which creates uncertainty for lower courts and practitioners attempting to navigate inconsistencies in this Court's separation-of-powers decisions applying *Johnson*. In a departure from earlier decisions, *Johnson* held that "so long as a legislative provision dictates procedure, that provision need not directly conflict with our procedural rules to be unconstitutional." *Johnson v Rockwell Automation, Inc.*, 2009 Ark. 241, at 7, 308 S.W.3d 135, 141. A few years later, this Court went further to state, "[t]he General Assembly lacks authority to create procedural rules, and this is true even where the procedure it creates does not conflict with already existing court procedure." *Broussard v. St. Edward Mercy Health Sys.*, 2012 Ark. 14, at 5-6, 386 S.W.3d 385, 389.

---

[1] 2016 Ark. 157, at 19, 490 S.W.3d 298, 309.

As presented, the question becomes whether the statute speaks to substantive or procedural law. If it is substantive, then it does not run afoul of Amendment 80; however, if it is procedural *in any respect*, then it is an unconstitutional invasion of this Court's authority over "rules of pleading, practice and procedure." Departing from the bright-line rule of *Johnson*, the majority now upholds the statute by stating that it "is more substantive than procedural." The majority acknowledges "that there are both substantive and procedural aspects to the statute at issue" but provides no standard to determine how much is too much procedure before it runs afoul of separation-of-powers. This conclusion cannot be squared with *Johnson* or *Broussard* without the practical effect of abandoning those precedents— something that neither party requested but which necessarily follows the holding announced today.

Both parties are partially correct in their characterization of the statute. The statute indeed reflects substantive law which "creates, defines, and regulates the rights, duties, and powers of the parties." *See Summerville v. Thrower*, 369 Ark. 231, 237, 253 S.W.3d 415, 419-20 (2007). As counsel for the petitioner acknowledged during oral argument, this statute effectively immunizes a party from claims of contributory negligence for noncompliance, including the injuries that flow from such negligence. The policy merits are not for this Court to decide, but practical immunity is a matter of substantive law and public policy. *Ray & Sons Masonry Contrs., Inc. v. U.S. Fid. & Guar. Co.*, 353 Ark. 201, 219, 114 S.W.3d 189, 200 (2003) (characterizing a statute of repose as a "substantive grant of immunity derived from a legislative balance of economic considerations affecting the general public and the respective rights of potential plaintiffs and defendants").

Conversely, respondent accurately acknowledges the evidentiary component of this statute. The statute prescribes (or in this case proscribes) "the steps for having a right or duty judicially enforced." *See Summerville*, 369 Ark. at 237, 253 S.W.3d at 420. It announces a rule of evidentiary admissibility by declaring that evidence of noncompliance shall not be admissible as evidence to prove negligence. The evidentiary component is a necessary corollary to the substantive component of the law. Rules of evidence have been characterized by this Court as procedural law. *See generally State v. Sypult*, 304 Ark. 5, 800 S.W.2d 402 (1990). Indeed, limiting particular evidence for a particular purpose is found throughout the Rules of Evidence, *see, e.g.*, Ark. R. Evid. 404(b), 407, 409, 502(d), 503(d), 504(d), 606(b), 803, 804, as well as statutes with evidentiary components sprinkled throughout the Arkansas Code.

It is unavoidable that there will be overlap in procedural and substantive law in statutes just as such overlap can be found in court rules and common law doctrines expounded by this Court. *See Sypult*, 304 Ark. at 7, 800 S.W.2d at 404 ("It is obvious that, in the interests of promoting important public policies and interests of the state, legislation enacted in this spirit will, on occasion, bring about conflict with the rules of the court."). It is not our role to second guess a substantive policy determination of the General Assembly. *See Cato v. Craighead Cty. Cir. Ct.*, 2009 Ark. 334, at 9, 322 S.W.3d 484, 490 ("The resolution of questions of policy is addressed in a democracy to the policy-making branch of government, the General Assembly, and it is not for the courts to make a statute say something that it clearly does not.").

The bright-line standard of *Johnson* requires if there is any procedural component then a statute is unconstitutional. *Johnson* does not apply a balancing test or invite the Court to weigh whether a statute is more substantive than procedural with the outcome based on a tipping of the scales one way or the other on the substantive-procedural divide. For the benefit of the people we serve, the Court should be explicit when it effectively changes the standard as the majority does here.

In this case, the logic of *Johnson*'s bright-line rule runs aground, for if this statute is unconstitutional because of its incidental evidentiary implications, then we are invalidating a substantive policy decision of the General Assembly. Amendment 80 explicitly confirmed our previously inherent and implied authority to promulgate rules of pleading, practice, and procedure, but it did not expressly or by implication forbid the exercise of incidental authority by the General Assembly to enact evidentiary statutes where there is no conflict and where such statutes are necessary to achieve the substantive policy decisions of the legislature. Here, *Johnson* went too far in its bright-line approach because by invalidating a statute with *any* evidentiary component, this Court abrogates substantive policy determinations of the General Assembly, which Amendment 80, § 3 explicitly forbids. This flaw was evident when we invalidated the medical cost provision of the Civil Justice Reform Act, Ark. Code Ann. § 16-55-212(b), in *Johnson* as well as the same specialty requirement of Ark. Code Ann. § 16-114-206(a)(1) & (2) in *Broussard*. In striking provisions with incidental evidentiary implications necessary to achieve the substantive purpose of the statutes, we invalidated substantive public policy decisions of the General Assembly. The

10

majority's decision implicitly acknowledges the flaw in *Johnson* by ignoring it, but the majority fails to make the departure explicit.

Where a statute creates a substantive right or alters certain common law doctrines, the General Assembly's statute controls as the legislative power is seated with that body so long as it does not run afoul of another explicit constitutional limitation. Ark. Const. art. 4, § 1. Likewise, where there is a conflict in procedural rules found in statute or this Court's promulgated rules, that is a matter peculiarly within the judicial sphere, and our procedural rule controls. Ark. Const. art. 4, § 1; Ark. Const. Amend. 80, § 3; *Sypult*, 304 Ark. at 7, 800 S.W.2d at 404 ("To protect what we hold inviolate we now declare that we will defer to the General Assembly, when conflicts arise, only to the extent that the conflicting court rule's primary purpose and effectiveness are not compromised; otherwise, our rules remain supreme."). Where the two find no conflict, there is no constitutional infirmity; particularly, where this Court has consistently maintained language in its own Rules of Evidence acknowledging the General Assembly's authority to speak to such matters. *See, e.g.*, Ark. R. Evid. 402 & 501.

The dividing line between substance and procedure is not clear-cut and appears weakest when dealing with evidentiary matters. This fact was highlighted in earlier decisions discussing the medical care provider privilege, Ark. Code Ann. § 16-114-207(3). In *Bedell*, we explained that Ark. R. Evid. 501 explicitly acknowledged the authority for statutory privileges that implicate the admissibility of certain testimony. *Bedell v. Williams*, 2012 Ark. 75, at 17, 386 S.W.3d 493, 505. A testimonial privilege is in some respects an evidentiary rule on the admissibility of certain testimony at trial, hence privileges are addressed in our

11

Rules of Evidence. However, a privilege is also substantive as this Court correctly explained in *Mendoza*. "[A] statute granting a privilege is substantive law." *Mendoza v. WIS Int'l, Inc.*, 2016 Ark. 157, at 8, 490 S.W.3d 298, 303. The *Mendoza* majority explained: "In Rule 501 of the Arkansas Rules of Evidence, we granted the legislature the authority to enact statutes regarding privilege because the power of the legislature to enact statutes regarding privilege is substantive law and does not conflict with amendment 80 and the separation-of-powers doctrine." *Id*.

Do statutes which incidentally touch on evidentiary matters as part of substantive policy decisions run afoul of separation-of-powers under Amendment 80, § 3, especially where our rules contemplate such statutes? Certainly not. Turning to the statute at issue, Ark. Code Ann. § 27-34-106(a) is a constitutional exercise of the shared authority of the General Assembly to promulgate incidental rules of evidence within the context of a substantive policy judgment considering the statute as a whole. No specific evidentiary rule conflicts with this statute, and the statute is perfectly in line with Rule 402 regarding the admissibility of relevant evidence. Ark. R. Evid. 402 ("All relevant evidence is admissible, *except as otherwise provided by statute* or by these rules or by other rules applicable in the courts of this State.") (emphasis added).

I concur in judgment.

WOMACK and WEBB, JJ., join.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part**. The time has come to correct the egregious error of *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, 308 S.W.3d 135, and its progeny. In cases involving our procedural rulemaking

power, *Johnson* dictates that we must strike down any statute that incidentally touches on procedure even when the statute is otherwise substantive and is designed to further legislative policy decisions. This bright-line rule leaves no room to consider the interwoven relationship between substance and procedure. It certainly does not allow this Court to determine whether a statute's substantive components outweigh its procedural aspects. Though today's decision does just that, *Johnson* curiously lives on.

The Court today takes a step in the right direction by unanimously recognizing that a statute containing both substantive and procedural aspects may be predominately substantive. It also unanimously concludes that such laws, like the challenged provision here, are constitutional under separation of powers. Though these conclusions are correct, they cannot be squared away with *Johnson*. Yet the majority refuses to grapple with, much less abandon, *Johnson* and its progeny. As a result, today's decision risks sowing even more confusion and uncertainty about how and when this Court will strike down a statute under amendment 80, section 3. Respectfully, we owe the people of this State better guidance than this. Accordingly, I concur only in the judgment.

I.

The judicial power was originally outlined in article 7 of the Arkansas Constitution of 1874. That changed in 2000 when voters approved amendment 80, which repealed most of article 7 and substantially revised the state court system. *See* 2 David Newbern et al., Ark. Civil Prac. & Proc. § 1:2 (5th ed. 2020). Among other things, the amendment provides that this Court "shall prescribe the rules of pleading, practice and procedure for all courts; provided these rules shall not abridge, enlarge or modify any substantive right and shall

13

preserve the right of trial by jury as declared in this Constitution." Ark. Const. amend. 80, § 3. Though our rulemaking power was recognized long before amendment 80, *see Curtis v. State*, 301 Ark. 208, 210, 783 S.W.2d 47, 48 (1990), this provision made our procedural rulemaking authority explicit and our responsibility to act mandatory, *see Clark v. Pine Bluff Civil Serv. Comm'n*, 343 Ark. 810, 814, 120 S.W.3d 541, 544 (2003).

In determining whether a rule falls within our constitutional authority, we first consider whether it is substantive or procedural. Substantive law "creates, defines, and regulates the rights, duties, and powers of the parties." *Summerville v. Thrower*, 369 Ark. 231, 237–38, 253 S.W.3d 416, 419–20 (2007) (quoting Black's Law Dictionary 1443 (7th ed. 1999)). In contrast, procedural law is defined as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." *Id.* (quoting Black's Law Dictionary 1221 (7th ed. 1999)). Procedural rules regulate "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Casement v. State*, 318 Ark. 225, 229, 884 S.W.2d 593, 595 (1994) (quoting *Sibbach v. Wilson*, 213 U.S. 1, 14 (1924)). The rules "are not an end in themselves, but provide a means to vindicate substantive rights and remedy or penalize substantive wrongs." 3A Sutherland Statutory Construction § 67:1 (8th ed. 2020).

The distinction between procedural and substantive law is often blurry. Indeed, "procedural issues may engender and corrode substantive rights, and substantive rights as well may embrace certain expectations about the procedures that will be used to enforce those rights." *Id.* A seemingly procedural statute "may exist 'to influence substantive

14

outcomes,' and may in some instances become so bound up with the [legislatively created] right or remedy that it defines the scope of that substantive right or remedy." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 419–20 (2010) (Stevens, J., concurring in part and concurring in the judgment) (quoting *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305, 310 (7th Cir. 1995) (Posner, J.)). "Such laws, for example, may be seemingly procedural rules that make it significantly more difficult to bring or to prove a claim, thus serving to limit the scope of that claim." *Id.* To strike "those portions of substantive state law that operate as procedural devices . . . could in many instances limit the ways that [the legislature] may define [statutory] rights and remedies." *Id.*

The challenged provision in this case highlights the hazy distinction between procedure and substance. Recognizing "the problems, including death and serious injury, associated with unrestrained children in motor vehicles," the General Assembly passed the Child Passenger Protection Act ("CPPA") in 1983 "to encourage and promote the use of child passenger safety seats." Ark. Code Ann. § 27-34-102. Toward that end, specified drivers must place, maintain, and secure child passengers under the age of fifteen in a restraint system that meets applicable federal safety standards. *See* Ark. Code Ann. § 27-34-104(a). Of particular relevance here, the CPPA sets out inadmissibility standards for failure to provide or use a child safety seat. *See* Ark. Code Ann. § 27-34-106. The provision at the center of this case states that "[t]he failure to provide or use a child passenger safety seat shall not be considered, under any circumstances, as evidence of comparative or contributory negligence, nor shall failure be admissible as evidence in the trial of any civil action with regard to negligence." Ark. Code Ann. § 27-34-106(a).

By dictating admissibility of evidence for a particular purpose, the statute "prescribe[s] the steps for having a right or duty judicially enforced." *Summerville*, 369 Ark. at 237–38, 253 S.W.3d at 419–20. At the same time, the evidence at issue was created and authorized solely by legislative design to define the boundaries of the causes of action and the defenses thereto for issues addressed by the CPPA. As part of that legislative design, the General Assembly expressed that the evidence should not be admitted for purposes of proving the statutory defense of comparative or contributory negligence or to show negligence in any civil trial. Section 27-34-106(b) also prohibits use of the evidence in any prosecution for negligent homicide. In other words, the legislature indicated that violation of the CPPA cannot provide a basis for holding an individual liable for any form of negligence. In sum, though section 27-34-106(a) is cast in evidentiary terms, it is more akin to a substantive policy choice addressing causes of actions and defenses.

II.

Today's decision errs by not explicitly abandoning *Johnson* and its progeny even though the decision today directly conflicts with that precedent. First, the bright-line rule in *Johnson* does not allow consideration of the nuances in the procedural–substantive dichotomy. Even if an otherwise substantive statute incidentally touches on procedure, it must be stricken down under *Johnson*. Second, *Johnson*'s sweeping assertion that all rules of evidence are procedural should be corrected. This latter assertion propped up this Court's erroneous conclusion in *Mendoza v. WIS International, Inc.*, 2016 Ark. 157, 490 S.W.3d 298, that the legislature is barred from adopting statutes that dictate the admissibility and

16

relevancy of evidence despite the authority granted by Arkansas Rule of Evidence 402. We should take this opportunity to correct the error created by these cases.

A.

The majority pays lip service to *Johnson* by citing the case for the proposition that "rules regarding pleading, practice, and procedure are the responsibility of this court." But *Johnson* went further than that: "[S]o long as a legislative provision dictates procedure, that provision need not directly conflict with our procedural rules to be unconstitutional. This is because rules regarding pleading, practice, and procedure are *solely* the responsibility of this court." *Johnson*, 2009 Ark. 241, at 8, 308 S.W.3d at 141 (emphasis added). In other words, *Johnson* held that our procedural rulemaking power is exclusive and it created out of whole cloth a bright-line rule that questions only "whether the challenged legislation dictates procedure." *Id.* Building on *Johnson*, this Court later held that the legislature "lacks authority to create procedural rules, and this is true even where the procedure it creates does not conflict with already existing court procedure." *Broussard v. St. Edward Mercy Health Sys.*, 2012 Ark. 14, at 5–6, 386 S.W.3d 385, 389.

The bright-line rule goes beyond the authority granted to this Court under the constitution. Our constitution creates a mandatory duty for us to act when it says "[t]he Supreme Court shall prescribe the rules of pleading, practice and procedure for all courts; provided these rules shall not abridge, enlarge, or modify any substantive right and shall preserve the right of a trial by jury as declared in this Constitution." Ark. Const. amend. 80, § 3. While it expressly prohibits this Court from acting in substantive areas, it neither

prohibits the General Assembly from acting concurrently on procedural issues or acting in areas where this Court grants it authority to do so within our rules. *See id.*

Application of the rule may violate the "substantive right" limitation imposed on this Court. If incidental impingements on procedural rules are sufficient to render an otherwise substantive law inoperative, the very objective of the "substantive rights" limitation would be imperiled. Consider this case. Had this Court applied *Johnson*'s standard, the substantive statute would have necessarily been stricken down as unconstitutional solely based on its evidentiary component. Such an outcome would "abridge, enlarge or modify a substantive right" in clear violation of the constitution.

Moreover, this rule has been unevenly applied through the years, beginning with our first case interpreting *Johnson*. A month after handing *Johnson* down, we cited the bright-line rule in *Cato v. Craighead County Circuit Court*, 2009 Ark. 334, 322 S.W.3d 484, but did not apply it. In *Cato*, we considered whether a statute exempting service members from civil process during military activities was valid under amendment 80, section 3. *Id.* We held the statute created a "substantive right to be free from service of process." *Id.* at 5, 322 S.W.3d at 487. Our reasoning was based on our view that the statute was rooted in public policy. *Id.* at 10, 322 S.W.3d at 490. To hold the statute unconstitutional "would be to impede upon the legislature's policy-making authority." *Id.* In other words, we upheld the statute based on the legislature's purpose, not the text of the statute. Though *Cato* alleged to rely on *Johnson*, this approach is entirely inconsistent with *Johnson*'s bright-line rule.

Two years later, we similarly upheld the rape-shield statute based on legislative purpose. *See Nelson v. State*, 2011 Ark. 429, at 6–8, 384 S.W.3d 534, 538. The statute

18

created "a precise procedure, including hearings, and how evidence must be admitted at trial." *Id.* at 11, 384 S.W.3d at 540 (Hannah, C.J., concurring). Nevertheless, we upheld the provision because it "achieves its purpose without supplanting this court's rulemaking power and ability to control the admissibility of evidence in the courts." *Id.* at 8, 384 S.W.3d at 538. We also noted that the statute did not impose a total bar on admissibility and vested wide discretion in the trial court. *Id.*

Given *Johnson*'s error and inconsistent application, we should abandon the bright-line rule at this time. Overruling *Johnson*'s bright-line rule should take us directly back to our prior standard described in *State v. Sypult*, 304 Ark. 5, 7–8, 800 S.W.2d 402, 404 (1990): "[W]e will defer to the General Assembly, when conflicts arise, only to the extent that the conflicting court rule's primary purpose and effectiveness are not compromised; otherwise, our rules remain supreme." Absent a direct conflict with our rules, we should decline to strike down a legislative act under amendment 80, section 3. *Id.*

B.

*Johnson* also held that rules of evidence are exclusively procedural and fall within this Court's domain; any statutory rules regarding the admissibility of evidence are unconstitutional. *Johnson*, 2009 Ark. 241, at 11, 308 S.W.3d at 142. To be sure, rules of evidence have been characterized by this court as procedural law. *See Sypult*, 304 Ark. at 7, 800 S.W.2d at 404. Yet *Johnson*'s categorical approach fails to acknowledge the distinction between procedural rules of evidence and evidentiary rules of substantive law. This sweeping approach, like the bright-line rule above, fails to take into account underlying substantive policy determinations made by the General Assembly.

We have implicitly recognized that such a distinction exists in the context of privileges. A testimonial privilege is undoubtedly a procedural rule of evidence that "clearly limits the evidence that may be introduced." *Johnson*, 2009 Ark. 241, at 11, 308 S.W.3d at 142. Indeed, privileges are explicitly addressed within our Rules of Procedure. At the same time, we have expressly stated that "a statute granting a privilege is substantive law." *Mendoza v. WIS International, Inc.*, 2016 Ark. 157, at 8–9, 490 S.W.3d 298, 303 (citing *Cato*, 2009 Ark. 334, at 9, 322 S.W.3d at 489). Similarly, our decision upholding the rape-shield provision in *Nelson* recognized that some evidentiary statutes embrace substantive policy and do not fall under the same umbrella as procedural rules of evidence. *See Nelson*, 2011 Ark. 429, at 6–8, 384 S.W.3d at 538.

We should no longer mechanically characterize any statute that touches on an evidentiary matter or dictates the admissibility of evidence as procedural law. This is particularly true where, as here, the statute has been explicitly authorized by this Court through our Rules of Evidence. Rule 402 provides that "[a]ll relevant evidence is admissible, except as *otherwise provided by statute* or by these rules or by other rules applicable in the courts of this State." Ark. R. Evid. 402 (2020) (emphasis added). Through our Rules of Evidence, we have authorized the General Assembly to pass statutes regarding the relevancy and admissibility of evidence. The challenged provision here falls squarely within the scope of that authority.

Five years ago, this Court erroneously rejected this natural reading of Rule 402 in *Mendoza*, 2016 Ark. 157, at 7–9, 490 S.W.3d at 302–03. Relying on *Johnson*, *Mendoza* held that the legislature was barred from adopting statutes that dictate the admissibility and

20

relevancy of evidence. *Id.* (citing *Johnson*, 2009 Ark. 241, at 11, 308 S.W.3d at 142). This holding flouted our rules of interpretation by rendering the language "except as otherwise provided by statute" meaningless. We should correct that error today as well.

To avoid Rule 402's plain language, *Mendoza* erroneously distinguished precedent interpreting identical language within Rule 501. *See Bedell v. Williams*, 2012 Ark. 75, 386 S.W.3d 493. There, we held that a statute granting medical providers the privilege of refusing to testify in certain matters did not violate separation of powers. *Bedell* recognized that the court, through Rule 501, provided the General Assembly power to enact statutes regarding testimonial privilege. *Id.* at 17, 386 S.W.3d at 505; *see* Ark. R. Evid. 501 (no person has a privilege to testify or prevent another from being a witness "except as otherwise provided by constitution or *statute*" (emphasis added)). Despite the identical language in Rule 402 and Rule 501, *Mendoza* determined that *Bedell* was distinguishable because "the power of the legislature to enact statutes regarding privilege [under Rule 501] is substantive law," and Rule 402 is "procedural in that it dictates what evidence is relevant." *Mendoza*, 2016 Ark. 157, at 9, 490 S.W.3d at 303. The *Mendoza* majority failed to explain how this purported distinction could be reconciled with the identical language within both rules.

*Mendoza* further ignored precedent recognizing the General Assembly's right to enact statutes regarding the relevancy and admissibility of evidence under identical language in then-controlling Uniform Rule of Evidence 402. *See Winston v. Robinson*, 270 Ark. 996, 1001–1002, 606 S.W.2d 757, 761 (1980).[1] Like current Rule 402, Uniform Rule of

---

[1] We adopted the Uniform Rules of Evidence as the Arkansas Rules of Evidence in 1986. *See In re Adoption of the Uniform Rules of Evidence*, 290 Ark. App'x 616 (1986) (per curiam).

21

Evidence 402 provided that "[a]ll relevant evidence is admissible, except as otherwise provided by statute . . . ." This language "acknowledges that other statutes may render inadmissible evidence that would be admissible under the rules." *Id.* "Even with the enactment of the Uniform Rules of Evidence, the General Assembly still may have enacted or may later enact specific statutes dealing with the admissibility of evidence. Such statutes legitimately express the public policy of the State of the admissibility of evidence, for example, that may be of dubious reliability." *Id.* In short, *Mendoza* stands as an outlier in our Rule 402 jurisprudence.

Ignoring Rule 402's recognition of statutory authority places numerous statutes at risk and could upend statutory schemes across multiple areas of law. For example, the capital murder sentencing scheme provides that "[e]vidence as to any mitigating circumstance may be presented by either the state or the defendant *regardless of the evidence's admissibility under the rules governing admission of evidence* in a trial of a criminal matter." Ark. Code Ann. § 5-4-602(4)(B)(i) (emphasis added); *but see* Ark. Code Ann. § 5-4-602(4)(C) (evidence relevant to aggravating circumstance governed by evidentiary rules). This statute is one of many provisions that dictate a procedural rule of evidence and, without the statutory authority recognized under Rule 402, could potentially violate amendment 80, section 3.[2] It is thus imperative that we correct the error in both *Johnson* and *Mendoza*.

---

[2]*See, e.g.*, Ark. Code Ann. § 27-50-804 (no record of bond forfeiture or conviction of person under motor vehicular traffic subtitle shall be admissible in any civil action); Ark. Code Ann. § 16-80-104(c) (mental health evaluation for minor convicted of capital murder or first degree murder not admissible over objections of minor); Ark. Code Ann. § 16-97-103 (list of evidence relevant to sentencing, provided no evidence overrides rape shield); Ark. Code Ann. § 3-3-405 (in felony prosecution for unlawful manufacturing of alcoholic beverages, general reputation of defendant for moonshining, bootlegging, or being engaged

II.

Any respect due *Johnson* and its progeny under the doctrine of *stare decisis* does not warrant perpetuating the error within those decision. *Stare decisis* is an important legal principle that should not be taken lightly. It assures our citizens that there will be some consistency in how the courts interpret our laws and it provides stability in the litigation process. *See Brickhouse v. Hill*, 167 Ark. 513, 523, 268 S.W. 865, 868 (1925). Overturning precedent should not be done cavalierly or without considerable thought. *See Zinger v. Terrell*, 336 Ark. 423, 430, 985 S.W.2d 737, 741 (1999). But *stare decisis* "isn't supposed to be the art of methodically ignoring what everyone knows to be true." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1405 (2020). It is not "an inexorable command," or "a mechanical formula

---

in the manufacture of or trade in intoxicating liquors shall be admissible); Ark. Code Ann. § 9-27-345 (limits admissibility of evidence against juvenile in juvenile court); Ark. Code Ann. § 9-27-321 (statements made by juvenile to intake or probation officer during intake process before hearing inadmissible); Ark. Code Ann. § 16-114-211 (result of state or federal regulator surveys or inspections, or by accrediting organizations, not otherwise privileged and that the plaintiff seeks to use as evidence against medical care provider must be relevant to plaintiff's injury to be admissible); Ark. Code Ann. § 17-11-343 (abstract or verbatim copy of any public record certified and impressed with official seal of any licensed abstracter shall be admissible); Ark. Code Ann. § 4-2-724 (when prevailing price or value of goods regularly bought and sold in any established commodity market is in issue, reports in official publications or trade journals or in newspapers or periodicals of general circulation shall be admissible; circumstances of the preparation of such a report may be shown to affect its weight but not its admissibility); Ark. Code Ann. § 16-47-110 (admissibility of instruments); Ark. Code Ann. § 12-12-704 (results of psychological stress test inadmissible); Ark. Code Ann. § 5-65-206 (admissibility of chemical analysis for DWI); Ark. Code Ann. § 9-17-316 (special rules of evidence and procedure in Uniform Interstate Family Support Act); Ark. Code Ann. § 6-21-608 (evidence of drugs, guns, or contraband in school obtained by statutory procedure shall be admissible); Ark. Code Ann. § 17-80-116 (failure of healthcare professional to request background check before issuing erectile dysfunction prescription not admissible as evidence of negligence); Ark. Code Ann. § 4-88-114 (assurance of voluntary compliance not admissible in any separate criminal proceeding within Deceptive Trade Practices Act); Ark. Code Ann. § 4-3-505 (documents admissible as evidence of dishonor).

of adherence to the latest decision." *Payne v. Tennessee*, 501 U.S. 808, 828–29 (1991). The doctrine "is at its weakest when we interpret the Constitution because a mistaken judicial interpretation of that supreme law is often practically impossible to correct through other means." *Ramos*, 140 S. Ct. at 1405 (internal quotations omitted). Indeed, there is nothing untoward about reconsidering a prior decision that perpetuates constitutional error across a wide array of cases. *See Brickhouse*, 167 Ark. at 522, 268 S.W. at 868 (our "strong respect for precedent . . . is a reasonable respect which balks at the perpetuation of error").

In determining whether to revisit precedent, courts have traditionally considered factors such as "the quality of the decision's reasoning; its consistency with related decisions; legal developments since the decision; and reliance on the decision." *Ramos*, 140 S. Ct. at 1405 (internal quotation omitted). As illustrated above, each of these factors point toward overturning *Johnson* and *Mendoza*. Rather than ignoring the erroneous precedent, as the majority does today, we should take this opportunity to correct our error.

III.

Though today's decision reaches the right conclusion, it will undoubtedly leave the parties puzzled by its reasoning. The majority's decision does nothing more than perpetuate the confusion and uncertainty that resulted from *Johnson*. This is not fair to the parties, the courts, and the people of Arkansas who rely on our decisions when interpreting state law under amendment 80, section 3. We should strive to clarify our decisions rather than further muddy the waters. Hopefully a majority will provide that clarity when another case implicating *Johnson* and its progeny inevitably returns to this Court.

Special Justice MARK WANKUM joins.

**BARBARA W. WEBB, Justice, concurring in part and dissenting in part**. I concur that Ark. Code Ann. § 27-34-106(a) is a doctrine of substantive law and constitutional. However, I write separately and dissent at the court's failure to overturn *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, 308 S.W.3d 135, and *Mendoza v. WIS International, Inc.*, 2016 Ark. 157, 490 S.W.3d 298.

Amendment 80 is a constitutional amendment voted on by the people directly, and is not a creature of the legislative branch. Amendment 80 clearly states that:

> The Supreme Court shall prescribe the rules of pleading, practice and procedure for all courts; provided these rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as declared in this Constitution.

Ark. Const. amend. 80, § 3. After Amendment 80 was passed, this court began building a progeny of cases excluding attempts by the legislature to invade the court's rule-making powers. Our case law has clearly stated that statutes which dictate what evidence is admissible are rules of practice and procedure, offend Amendment 80, and are unconstitutional. *Johnson*, 2009 Ark. 241, at 11, 308 S.W.3d at 142. Only a few short years ago, we reaffirmed this principle when we answered another certified question and held that a nearly identical statute was unconstitutional because it dictated a rule of evidence in violation of Amendment 80. *Mendoza*, 2016 Ark. 157, at 5–6, 490 S.W.3d at 301–02 (quoting *Summerville v. Thrower*, 369 Ark. 231, 237, 253 S.W.3d 415, 419–20 (2007)). Based on these prior decisions, the doctrine of *stare decisis* would appear to control the outcome of this case.

"*Stare decisis*" is the idea that today's court should stand by yesterday's decisions and a "foundation stone of the rule of law." *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455

25

(2015) (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014)). This doctrine "permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact." *Vasquez v. Hillery*, 474 U.S. 254, 265–66 (1986). Writing in Federalist 78, Alexander Hamilton emphasized the importance of *stare decisis*: To "avoid an arbitrary discretion in the courts, it is indispensable" that federal judges "should be bound down by strict rules and precedents, which serve to define and point out their duty in every particular case that comes before them." *Ramos v. Louisiana*, ___ U.S. ___, ___, 140 S. Ct. 1390, 1411 (2020) (Kavanaugh, J., concurring in part) (citing *The Federalist No. 78*, p. 529 (J. Cooke ed. 1961)). *Stare decisis*' "greatest purpose is to serve a constitutional ideal—the rule of law." *Id*. (citing *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 378 (2010)); s*ee also City of Bryant v. Boone Tr.*, 2018 Ark. App. 547, 564 S.W.3d 550 (the policy of *stare decisis* is designed to lend predictability and stability to the law).

Overruling precedent is never a small matter. *Ramos*, 140 S. Ct. at 1411. Application of that doctrine, although "not an inexorable command," is the "preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Id*. (citing *Payne v. Tennessee*, 501 U.S. 808, 827–28 (1991)). It also reduces incentives for challenging settled precedents, saving parties and courts the expense of endless re-litigation. *Kimble*, 576 U.S. at 455. Upon belief that precedent was made in error, the court must delicately weigh the injustice that arose from the error with the

26

potential injury that will result from the correction. *People v. Hobson*, 384 N.Y.S.2d 419, 488 (N.Y. 1976). Upon the scales of justice must lie the recognition that consistent development of legal principles fosters the actual and perceived integrity of the judicial process. This is because, to be free, is to live under a government by law. *Rex v. Shipley*, 21 St. Tr. 847 (K.B. 1784) (Lord Mansfield presiding). "Miserable is the condition of individuals and in danger is the condition of the state if there is no certain law, or, which is the same thing, no certain administration of the law[.]" *Id.* Under the doctrine of *stare decisis*, we are bound to follow prior case law. *Chamberlin v. State Farm Mut. Auto. Ins. Co.*, 343 Ark. 392, 397–98, 36 S.W.3d 281, 284 (2001).

However, as valuable as it is to the rule of law, *stare decisis* does not require stagnation. *Shannon v. Wilson*, 329 Ark. 143, 161, 947 S.W.2d 349, 358 (1997). Precedent only governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. *Chamberlin*, 343 Ark. at 397–98, 36 S.W.3d at 284. The test for overruling precedent is whether adherence to the rule would result in great injury or injustice. *Id.* To overrule precedent, the court demands a special justification or strong grounds or "otherwise the doctrine [of *stare decisis*] would be no doctrine at all." *Ramos*, 140 S. Ct. at 1414 (citing *Hubbard v. United States*, 514 U.S. 695, 716 (1995)).

It is an important feature of *stare decisis* that the doctrine is not as strict "when we interpret the Constitution because our interpretation can be altered only by constitutional amendment or by overruling our prior decisions." *Id.* at 1413 (quoting *Agostini v. Felton*, 521 U.S. 203, 235 (1997)). The court "must balance the importance of having constitutional questions *decided* against the importance of having them *decided right*." *Id.* (quoting *Citizens*

27

*United v. Fed. Election Comm'n*, 558 U.S. 310, 378 (2010) (Roberts, C.J., concurring) (emphasis in original)). The highest value of *stare decisis*—respecting past decisions that are wrong to keep the law settled—is not the priority when the Constitution is the thing that has been wrongly decided. *See Kimble*, 576 U.S. at 455–56 (citing *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393 (1932)). There is a history of overruling erroneous constitutional interpretations instead of upholding *stare decisis* when correction through legislative action is practically impossible. *Citizens United*, *supra*; *Agostini*, *supra*; *Burnet*, *supra*.

This leads to the dissonance with this case and our prior holdings in *Johnson* and *Mendoza*. Not all rules of evidence are exclusively ones of pleading, practice, or procedure. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406–07 (2010). Amendment 80 contains a meaningful portion of the same language as the Federal Rules Enabling Act: "these rules shall not abridge, enlarge, or modify any substantive right." *Compare* Ark. Const. amend. 80, § 3 *with* 28 U.S.C. § 2072(a). The limitation in Amendment 80 means that to be procedural, a rule of evidence must "really regulat[e] procedure—which is the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Shady Grove*, 559 U.S. at 406–07 (citing *Sibbach v. Wilson*, 312 U.S. 1, 14 (1941); *Hanna v. Plumer*, 280 U.S. 460, 464 (1965); *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 8 (1987)).

The test is not whether the rule affects a litigant's substantive rights; most procedural rules do. *Id.* (citing *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 445 (1946)). What matters is what the rule itself regulates: If it governs only "the manner and the means" by which the

28

litigants' rights are "enforced," it is valid; if it alters "the rules of decision by which [the] court will adjudicate [those] rights," it is not. *Id*. While it is true that some rules of evidence may dictate the manner in which evidence is presented, they are not wholly procedural. Instead, evidentiary rules may detail what information can be used to prove a doctrine of substantive law. Stated differently, rules of evidence are rules related to not just procedure but also substantive doctrines of law. We erred when we previously held that all rules of evidence are ones of pleading, practice, or procedure and beyond the reach of the legislature. With this in mind, we should focus on whether to overturn past decisions that conflict with the majority decision in this case.

I look to four factors to determine if there has been a great injustice or injury which would justify abrogating *Johnson* and *Mendoza*. I first look to whether the decisions were erroneously and egregiously decided and find that they were so decided as detailed above. All rules of evidence are not ones of pleading, practice, or procedure and can blend harmoniously with substantive law promulgated by the legislature. The erroneous decisions are egregious because they offend the Arkansas Constitution. Not only did this court abrogate the will of the people as expressed through their representatives, but we also made it nearly impossible for correction to occur absent another constitutional amendment or this court's intervention—and this court has a duty to intervene on behalf of the Constitution.

Next, I look for any significant negative jurisprudential or real-world consequences caused by the existing decisions, such as workability, consistency, coherence with other decisions, and any other significant factors. The focus of this inquiry is whether the current precedent has had a cognizable and quantifiable negative effect on the citizenry. In the

29

instant case, the answer is a resounding "yes." The litigants in this case passed Amendment 80, which allows the court to make only rules of practice, pleadings, and procedure so long as no substantive right is abridged. The litigants also, through their elected representatives, have made a substantive doctrine of law regarding contributory negligence in a civil case. A great injustice occurs if we continue to apply the bright-line rules found in *Johnson* and *Mendoza* because we may only make rules of procedure, but instead, we allow our judicial power to continue to abridge the substantive rights found in acts passed by the legislature.

Additionally, under the current case law, every statute that touches the admissibility of evidence will have to be challenged to determine its constitutionality. The battle will wage into infinity as every statute limiting evidence is procedural in process and substantive in effect. This will result in increased litigation, delayed conclusions of an already lengthy trial for parties who have likely suffered a significant loss, and increased legal fees for the parties. This is an absurd result, as it is not judicially economical, puts an undue burden on our judiciary, runs counter to the spirit of Amendment 80, and violates our own evidentiary Rule 402. The goal of any court should be to create law that lends itself to an efficient use of the adjudicatory process, not conflating it at the benefit of the bar and the expense of the public.

Then, I look to whether overruling these precedents would unduly upset reliance interests and find little reliance interests that would be affected. The statutes in *Johnson* and *Mendoza* are an issue only during a trial. To the extent parties have relied on the holdings in *Johnson* and *Mendoza*, today's opinion should be made prospective in future cases. In fact, I find that carving out an exception or otherwise failing to overrule *Johnson* and *Mendoza*

would take an already settled, but wrongly decided rule of law, and unsettle it—so that it is now both wrongly decided *and* unsettled. Moreover, because this is a constitutional issue, any reliance interests must yield to the importance of having our Amendment 80 case law decided rightly. Correcting these constitutional errors would create case law that will foster reliance interest and as parties and their attorneys will be able to approach each statute as constitutional and preclude additional litigation to determine the constitutionality of the statute.

Finally, I look to the age of the precedents that I am considering overruling. Both *Johnson* and *Mendoza* are relatively new decisions as Amendment 80 is also a relatively new constitutional provision. There is great hesitation in overruling judicially "young" precedents because, at the root of the principle of *stare decisis*, is the humble assumption that no particular court possesses wisdom that surpasses that of its predecessors. *People v. Hobson*, 384 N.Y.S.2d 419, 488 (N.Y. 1976). However, the paramount concern is that any erroneous interpretation of Amendment 80 will be exceptionally difficult for the populace to correct as passing amendments is a much greater undertaking than passing legislation. We also are duty bound to correct an erroneous interpretation which has not only deprived the citizenry who passed Amendment 80 at the polls of its constitutional force but has also hamstrung their elected legislators from regulating substantive doctrines of law.

*Stare decisis* is not an end in itself but a means to effectuate consistency and predictability in the law. That doctrine must yield in constitutional settings because our state cannot be a constitutional form of government if the judiciary enforces the constitution wrongly. This court should correct the errors of *Johnson* and *Mendoza* by handing the power

back to the people's representatives to make law based on policy decisions of the legislature, not the judiciary. I would overrule *Mendoza*, abrogate *Johnson*'s holding that rules of evidence are rules of pleading, practice, and procedure, answer the certified question in the negative, uphold Ark. Code Ann. § 27-34-106(a) as constitutional, and correct the course of Amendment 80 jurisprudence to its proper position.

For these reasons, I concur in part and dissent in part.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*; and *Rainwater, Holt & Sexton, P.A.*, by: *Denise Reid Hoggard* and *Jeremy McNabb*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Gregory T. Jones* and *Kristen S. Moyers*; and *Dover Dixon Horne PLLC*, by: *Todd Wooten*, for appellees.